ANNIE T. TREACY and Others v. GEORGE C. POWER and Others.[1]

January 31, 1908.

Nos. 15,331—(46).

**Finding not Within The Issues—New Trial.**

Action commenced by appellants to recover from respondents, as executors of the estate of H. D. Brown, deceased, an undivided interest in a certain business held and conducted by Brown in his own name, but alleged to have been so conducted by him in trust for the firm composed of appellants and himself. Respondents alleged in their answer, and undertook to prove at the trial, that from the inception of such business interest the same was owned by Mr. Brown personally. The trial court found with appellants to the extent that such business interest was owned by the firm of which they were members, and was conducted and held by Brown in trust for such firm for a certain number of years. The court also found that at or about the termination of such period a sale of the interest was made by the firm to Brown personally. *Held*, that this latter finding was not within the issues, was not tried by consent of appellants, and in so finding, and in ordering judgment for respondents, error was committed, for which a new trial must be granted.

In the probate court for Ramsey county plaintiffs filed claims against the estate of Hiram D. Brown. The claims were dismissed. From the

----

[1] Reported in 114 N. W. 760.

order, Bazille, J., dismissing the claims the claimants appealed to the district court for Ramsey county, where pleadings were framed. The matter was tried before Olin B. Lewis, J., who affirmed the order of the probate court. From an order denying a new trial, plaintiffs appealed. Reversed.

*Markham & Calmenson* and *O'Brien & Albrecht,* for appellants. *How, Butler & Mitchell,* for respondents.

LEWIS, J.

In 1894 Hiram D. Brown, Micheal Treacy, and D. S. Sperry entered into a copartnership agreement for the purpose of carrying on the printing and stationery business in St. Paul under the firm name of Brown, Treacy & Co. In February, 1896, Mr. Brown entered into another copartnership with H. H. Bigelow for the purpose of carrying on the manufacture and sale of printing and stationery specialties. December 18, 1900, the firm of Brown, Treacy & Co. was dissolved by the death of Mr. Treacy. In April, 1905, the firm of Brown & Bigelow was dissolved by the death of Mr. Brown. An accounting of that firm was had, and during the administration of Mr. Brown's estate Mr. Sperry, the surviving member of the firm of Brown, Treacy & Co., and the widow and heirs of Micheal Treacy, filed a claim against the estate of Mr. Brown, contending that he was not the personal owner of one-half of the assets of Brown & Bigelow, but that he at all times represented the firm of Brown, Treacy & Co., and that he carried on the business and owned and controlled the assets thereof in trust for the benefit of that firm. The probate court having denied the claim, appeal was taken to the district court, and pleadings were framed.

The complaint of the claimants set forth the history of the two firms and their dissolution, and demanded judgment against the estate of Mr. Brown for the sum of $41,682, as appellants' proportion of the Brown & Bigelow business. The executors answered, admitted the existence and dissolution of the two partnerships as stated, and alleged as follows:

"Defendants allege, further, that on or about the 19th day of March, 1898, the said Hiram D. Brown contributed to the capital of the

then firm of Brown & Bigelow the sum of twenty-two hundred fifty dollars ($2,250.00), and the said amount so contributed by him was withdrawn by him from the firm of Brown, Treacy & Co., and at the time of said withdrawal the amount thereof was entered upon the books of Brown, Treacy & Co., under an account therein described as 'Brown & Bigelow Investment a/c.' That said entry so remained upon the books of said Brown, Treacy & Co. in said form until on or about December 1, 1900, upon which date the said amount of twenty-two hundred fifty dollars ($2,250.00) was charged to the personal account of Hiram D. Brown, and has ever since said date remained upon the books of said Brown, Treacy & Co. as a personal charge against Hiram D. Brown.

"That said entry of December 1, 1900, was so made with the intention and understanding by and between the members of the said firm of Brown, Treacy & Co. that the said contribution of twenty-two hundred fifty dollars ($2,250.00) to the firm of Brown & Bigelow had been and was a contribution by H. D. Brown on his personal account, and not otherwise, and that said contribution should be so held and considered."

The answer further alleged that upon the death of Mr. Treacy, his wife, Annie T. Treacy, was appointed administratrix, and that during the months of January and February, 1901, the business of Brown, Treacy & Co. was wound up and dissolved, and a full accounting had of all of the assets thereof, and that the property of the firm was distributed between the surviving partners and Mrs. Treacy as administratrix. The answer alleged:

"That in and by said agreement the books of account of said copartnership, including the entry of December 1, 1900, hereinbefore mentioned, were ratified, approved, and confirmed and in the determination by said agreement of the interest of said H. D. Brown in and to the assets of said partnership of Brown, Treacy & Co. the amount of the interest of said Brown was reduced by the amount of said sum of $2,250, theretofore charged to his personal account as aforesaid."

Appellants replied to the answer, admitted the execution of an agreement of settlement of the partnership accounts, but alleged that the interest of the firm of Brown, Treacy & Co. in the business of Brown & Bigelow was not included therein.

The trial court found in part as follows:

"On or about the 19th day of March, 1898, the said Brown, Treacy & Co. contributed to the capital of the then firm of Brown & Bigelow the sum of $2,250 as hereinbefore found, and the amount thereof was entered upon the books of Brown, Treacy & Co. under an account therein described as 'Brown & Bigelow Investment Account.' Said entry so remained upon the books of said Brown, Treacy & Co. in said form until on or about December 1, 1900, on which date a partial accounting and division of the assets of the copartnership of said Brown, Treacy & Co. was had between all the members of said firm, and a division, transfer, and distribution of certain assets of said copartnership was then had between said partners as detailed in the general books of account of said firm of said date, and particularly in General Journal 1, at page 120, and the books therein referred to; and on said date, as a part of said accounting and division of assets, the said amount of $2,250 was charged to the personal account of Hiram D. Brown, and has ever since said date remained on the books of said Brown, Treacy & Co. as a personal charge against said Hiram D. Brown. That said entry of December 1, 1900, was so made with the intention and understanding by and between the members of said firm of Brown, Treacy & Co. that said contribution of $2,250 to the firm of Brown & Bigelow should thereafter be considered and held as the contribution by H. D. Brown on his personal account, and not otherwise; and said Brown, Treacy & Co. at that time sold and transferred, for good and valuable consideration, all their interest in and to the copartnership of Brown & Bigelow to said H. D. Brown, with full knowledge of all the parties; and said Hiram D. Brown ever thereafter remained the sole and exclusive owner until the time of his death of all the former interests of said Brown, Treacy & Co. in and to the business of said Brown & Bigelow."

The court also found that after the death of Mr. Treacy, and during the months of January and February, 1901, the business of the

firm of Brown, Treacy & Co. was wound up and dissolved, a full accounting had, and an agreement of settlement entered into by the surviving members and Mrs. Treacy, and that "in and by said agreement the assets of said Brown, Treacy & Co. were fully described and determined, and did not include any interest in the business of said Brown & Bigelow."

From the foregoing statement it will be observed that the issue presented by the pleadings was clearly defined. Appellants contended that, from its inception in 1896 until the death of Mr. Brown in 1905, a one-half interest in the Brown & Bigelow business was carried in the name of Mr. Brown for the benefit of the firm of Brown, Treacy & Co. Respondents took the position that Mr. Brown was the only member of the firm of Brown, Treacy & Co. at any time interested in the Brown & Bigelow business, and that it was his personal interest from the beginning thereof. At the trial appellants introduced evidence sufficient to satisfy the trial court that the firm, and not Mr. Brown personally, owned that interest, and that it was carried in the name of Mr. Brown for the benefit of the firm of Brown, Treacy & Co. According to the books of account of Brown, Treacy & Co. that firm had made the contribution to the capital of Brown & Bigelow, and there was other evidence tending to show that the Brown & Bigelow interest was treated as that firm's business during the years 1896, 1897, 1898, 1899, and 1900.

Appellants having rested their case upon this evidence, respondents offered in evidence other book entries, notably page 120 of Journal 1, and corresponding ledger items. It was claimed that these entries tended to prove that a partial distribution of the assets of the firm had taken place on or about December 1, 1900, and that the contributions to the capital of Brown & Bigelow were in fact made by Mr. Brown personally, although prior to that time apparently carried on the books as a firm asset. Respondents also offered in evidence the agreement of final settlement and dissolution of Brown, Treacy & Co., which was made and executed by the parties after Mr. Treacy's death. Appellants insist that the items of account offered by respondents were irregularly entered, and not entitled to credit, for the reason that it

appeared from the face of the books that they were not entered in the regular course of business, and were not sufficient to overcome the presumption that the fact already established continued in the future. Respondents assert that these items were entitled to full credence for all purposes, and that appellants had waived all claim of fraud or mistake. At folio 476, et seq., of the record it appears that the express waiver by appellants of fraud and misrepresentation had reference to the alleged final settlement and accounting claimed to have taken place between Brown, Sperry and Mrs. Treacy, after the death of Mr. Treacy, and in their briefs appellants disclaim any intention to waive objection to the book entries referred to, on the ground of fraud, mistake, or otherwise, and insist that the question of a sale of the interest by Brown, Treacy & Co. to Mr. Brown was not an issue raised by the pleadings, that no such issue was tried, and that they never consented that it should be tried and submitted to the court for determination.

We do not discover from the record that these entries were introduced for the purpose of proving a sale. They were not introduced for the purpose of showing a transfer of the interest which belonged to Brown, Treacy & Co. to Mr. Brown personally, but for the purpose of sustaining the defense that the interest belonged to Mr. Brown from the beginning, and that the entries were made for the purpose of causing the books to correspond with the facts. The position of respondents, as defined by their answer, and the position taken by the court, are inconsistent. The evidence offered on behalf of appellants contradicted the theory of the defense. The court accepted that evidence, and found against the contention of respondents. Appellants having proved to the satisfaction of the court that the business was inaugurated and conducted by Mr. Brown for the period of at least five years on behalf of the firm, that condition was presumed to continue in the future, and the burden was upon respondents to show the contrary. If respondents had offered the book entries and other evidence for the purpose of showing a sale, the same would have been objectionable under the pleadings. For this reason the finding of the court that there was a sale became material in the disposition of the case. The order for judgment was based upon it. We do not

find from an examination of the record that appellants ever consented that any such issue should be tried, nor do we find that it was in fact tried.

Respondents further suggest that the finding as to a sale becomes immaterial, because it conclusively appears from the subsequent conduct of the surviving members of Brown, Treacy & Co. that they knew and understood the purport of the entries referred to, and by entering into an agreement of accounting and dissolution of that firm the parties ratified the transaction and confirmed the title in Mr. Brown. Without expressing an opinion as to the force of this evidence, it is sufficient to say that the judgment of the court was not entirely based upon it, and it cannot be accepted as conclusive. It is evident that the learned trial court assumed that the question whether a sale was effected on or about December 1 was within the issues pleaded. This was error, for which a new trial must be granted.

So ordered.

BROWN, J. (dissenting).

The findings of the trial court are fully sustained by the evidence, and a new trial should not, in my judgment, be granted upon an unimportant question of practice. Conceding that there was technical error in the respect pointed out in the opinion, it was error without prejudice.

The question whether the relations theretofore existing between the two firms were severed and terminated on December 1, 1900, was one of the principal issues litigated on the trial below, and for all practical purposes was fully presented by the pleadings. It is not important whether those relations were brought to an end by sale or by a dissolution of the copartnership agreement; and the fact that the court below characterized it in its findings as a sale, the ground on which a reversal is ordered, is of no real importance. The evidence is abundant to sustain the trial court in finding that the relations between the two firms were then fully and finally terminated, and the rights of all parties subsequently fully settled and adjusted; and, there being no substantial error in the record, the case should be affirmed.

For these reasons, I am unable to concur in the majority opinion.