ANNIE T. TREACY and Others v. GEORGE C. POWER and Others.[1]

September 23, 1910.

Nos. 16,599—(175).[2]

**Dissolution of partnership — account stated — tracing firm asset in hands of partner.**

H. D. B., of the partnership of B. T. & S., entered into a contract with one H. H. B. to engage in business under the firm name of B. & B. Certain moneys were advanced by H. D. B., charged on books of B. T. & S., and other moneys by H. H. B. The firm of B. T. & S. was dissolved, and an accounting of all its affairs had, and an account stated signed by all the partners. The instrument did not expressly refer to the B. & B. business. H. D. B. had charged himself on the books of B. T. & S. with $2,500 on account of the B. & B. business. Subsequently H. H. B. under the contract provisions purchased H. D. B.'s interest in the B. & B. business for $48,766.73. S. and the legal representative of T. brought an action against the representatives of

1Reported in 127 N. W. 936.        2April, 1910, term calendar.

H. D. B. to recover a proportionate share in the proceeds of the sale of the B. & B. business. The jury expressly found that H. D. B., for the benefit of the copartnership of B. T. & S., entered into a contract of partnership with H. H. B., under the firm name of B. & B., and that the members of the firm of B. T. & S. did not subsequently or at any time agree that the contribution of $2,250 to the firm of B. & B. should be treated as having always been the individual property of H. D. B. The trial court gave the plaintiff one-third of the proceeds received by H. D. B. during his life and one-third of the sum for which the B. & B. business was sold less one-third of $2,250. It is *held:*

1. That the trial court did not err in submitting the issues to the jury.

2. That errors in the charge of the trial court, upon a construction of the charge as a whole, fell within the rule of Steinbauer v. Stone, 85 Minn. 274.

3. That the account stated signed by B. T. & S. and the book entry by H. D. B. charging himself with $2,250 on account of the B. & B. business did not operate conclusively to defeat plaintiff's rights, but were to be considered together with the other evidence relating to the same matter.

The conclusion of the trial court on this point was reasonably sustained by the evidence, notwithstanding that account stated and that entry.

Parties to an account stated signed by them are not concluded by the presumption that it was a final settlement of all valid debts, debits, and credits as to matters which were not contemplated by them or which were not in fact included in the statement, though they existed at the time. Either party may show that the balance found was struck upon a partial and not upon a general accounting, and either party may avail himself of matters outside of the settlement by showing that it was not included therein.

4. The relief given by the trial court was proper.

**Use of firm asset by one partner — right of excluded partner.**

Where, on dissolution of a partnership, a partner takes possession of a firm asset, treats it as his own, and carries on the business thereafter in his own name, and on his own account, the excluded partner has a right at his election to demand either the actual profits made by the partner continuing the business or his share of the capital thus employed with interest, so that, where at the time of the accounting the amount due the retiring partner is less than the value of the firm assets at the dissolution, the continuing partner is chargeable with the larger amount.

**Mingling trust fund.**

A trustee cannot mingle the trust estate with his own and deny to the cestui que trust the option of following the joint affairs and availing himself of the proceeds the trustee may have realized from his improper conduct.

After the decision on the former appeal, reported in 103 Minn. 212 (114 N. W. 700) defendants amended their answer as stated in the opinion. Plaintiffs amended their reply and admitted the execution of the accounting agreement in February, 1901, which valued and divided the assets of Brown, Treacy & Company "other than the interest of said firm in said firm of Brown & Bigelow," and alleged that interest was not included in such agreement; that the division of assets and agreement therefor was prepared by Brown and was entered into by Sperry and the administratrix of Treacy upon the representations of Brown, which were relied upon by them as true; that the interest in Brown & Bigelow was not a part of the firm assets, and that on March 19, 1898, Brown, Treacy & Company contributed to the capital of Brown & Bigelow the sum of $2,250; they admitted that subsequently an entry was made on the firm books crediting Brown with a bonus of $2,400 and charging him with $2,250; denied these entries were made on December 1, 1900, but alleged they were made by Brown or under his direction after the death of Treacy, without the knowledge or consent of either of the other members of the firm.

The undisputed facts were as follows: In 1894 Hiram D. Brown, Michael Treacy and Dennis S. Sperry entered into a partnership under the firm name of Brown, Treacy & Company for the purpose of carrying on the printing and stationery business, and agreed to share equally in the profits and losses. This partnership was dissolved by the death of Treacy in December, 1900. An accounting was had and an accounting agreement, dated February 25, 1901, was entered in a supplementary ledger, and was signed by the surviving partners and by Annie T. Treacy, administratrix. This stated that at the death of Michael Treacy the assets, which are enumerated and posted into the supplementary ledger, amounted to $72,000, the interest of the Treacy estate in which, amounting to $24,000, had been purchased by the two surviving partners. The account also specified other items of property (real estate, bills and accounts receivable) amounting to $35,839, which it was agreed should remain undivided for the purpose of being converted into

cash, so as to net the most to the parties interested, and should be owned jointly in equal interests by Brown, by Sperry and by Mrs. Treacy as administratrix. It was further agreed that out of the joint property or the cash therefrom certain accounts payable, amounting to $3,596.25, were to be paid.

On February 7, 1896, Hiram D. Brown executed a written copartnership agreement with Herbert H. Bigelow, to continue for the term of five years, for the purpose of engaging in a general advertising novelty business, under the name of Brown & Bigelow, by the terms of which Brown agreed to contribute one-half of the capital necessary to conduct the business and to provide the capital for Bigelow, so that their interests should appear equal, and Bigelow agreed to put in $500 and to pay eight per cent. interest per annum for all moneys advanced him. It was agreed that all work done by Brown, Treacy & Company should be charged to Brown & Bigelow at actual cost.

The new firm was established in the buildings leased by Brown, Treacy & Company, and for three or four years its accounts were kept by the bookkeepers of the old firm and the expense thereof divided pro rata. Brown made no contribution to the capital of Brown & Bigelow. On March 19, 1908, that firm was indebted in open account to Brown, Treacy & Company in the sum of $4,939.54. On that day Bigelow paid in a further sum of $2,250 and gave his note to Brown, Treacy & Company for $439.54. On the books of Brown & Bigelow the payment by Bigelow was credited to a new account, entitled H. H. Bigelow, Capital Stock, and capital stock to the amount of $2,250 was credited to an account entitled Brown, Treacy & Company, Investment Account. On the books of Brown, Treacy & Company the account of Brown & Bigelow was credited with the amount of Bigelow's note, $439.54, with the $2,250 from H. H. Bigelow, and with the $2,250 from Brown, while a new account, entitled Brown & Bigelow Investment Account, was opened and credited with $2,250. There was evidence that in April or May, 1900, Brown directed the bookkeeper to erase the name Brown, Treacy & Co. and substitute the name Hiram D. Brown in the ledger account on Brown & Bigelow's books entitled "Brown, Treacy

& Co. Investment Account," and that Bigelow knew of this change at the time it was made.

On February 7, 1901, Hiram D. Brown and H. H. Bigelow entered into new articles of agreement to continue their business for another term of five years, each partner agreeing to contribute one-half of the capital necessary to conduct the business, with provisions as to what should be done in case either partner died before the expiration of the partnership.

The case having been placed on the jury calendar of the district court for Ramsey county, the court ordered that the case be tried without a jury, except that the two issues of fact mentioned in the opinion be submitted to a jury. The case was tried before Orr, J., and the jury answered the questions submitted to it as stated in the opinion. After the return of the special verdicts, defendants moved to vacate them on the ground they were not justified by the evidence and were contrary to law, and to grant a new trial for errors of law, duly excepted to, and for the reason the verdicts were not justified by the evidence. The motions were denied and subsequently the court made findings, in which it approved the verdicts and ordered judgment in favor of plaintiffs that the plaintiff Sperry was entitled to one-third of $262.80 received by Hiram D. Brown in his lifetime and to one-third of $48,766.73, less one-third of the sum of $2,250, and the other plaintiffs were entitled to an equal amount, and the plaintiffs were entitled to a decree reversing the order of the probate court appealed from and allowing each claim in the sum of $15,593.17. Defendants moved to amend the findings of fact and conclusions of law so as to include, among others, findings whether there was at any time any understanding between Hiram D. Brown and Dennis S. Sperry that the contribution of $2,250 to the firm of Brown & Bigelow should be considered the personal property of Brown; whether Sperry had any part in the control of the affairs of Brown & Bigelow; whether Sperry knew of the making of the entries on the books of Brown, Treacy & Company charging the $2,250 to the personal account of H. D. Brown; whether Sperry and Treacy's administratrix signed the accounting agreement of Febru-

ary, 1901, with the knowledge of such entries, and whether Sperry and Treacy's administratix before the signing of the accounting agreement agreed that the Brown & Bigelow interest should be treated as belonging to H. D. Brown and with that understanding signed the agreement. The motions were denied. From an order denying a new trial, defendants appealed. Affirmed.

*How, Butler & Mitchell,* for appellants.

*Markham & Calmenson* and *John D. O'Brien,* for respondents.

JAGGARD, J.

Pursuant to a former hearing and decision in this case, reported in 103 Minn. 212, 114 N. W. 760, defendants amended their answer by striking out certain portions and inserting in lieu thereof the following allegation: "That said entry of December 1, 1900, was so made pursuant to an understanding and agreement which was then and there had and made by and between the members of said firm of Brown, Treacy & Company, that the said contribution of $2,250 to the firm of Brown & Bigelow should be held and considered as having been a contribution by H. D. Brown on his personal account, and that the said interest in the firm of Brown & Bigelow should be treated and considered as having always been the individual property of said H. D. Brown." Annie T. Treacy died since the last trial. The administrator of her estate has been substituted as a plaintiff.

The case was tried to the court, who submitted certain specific issues to the jury which were answered as follows namely:

First question: Did Hiram D. Brown for and on behalf of and for the benefit of the copartnership of Brown, Treacy & Company enter into a contract of partnership with H. H. Bigelow for the purpose of carrying on at said city of St. Paul the business of manufacturing, printing and selling certain specialties in the printing and stationery business as alleged in the complaint? Answer: Yes.

Second question: Did the members of said firm of Brown, Treacy & Company on or about December 1, 1900, or at any time, agree that the contribution of $2,250 to the firm of Brown & Bigelow mentioned in the answer of the defendants should be held and

considered as having been a contribution by Hiram D. Brown on his personal account, and that said interest in the firm of Brown & Bigelow should be treated and considered as having always been the individual property of said Hiram D. Brown? Answer: No.

The court thereupon made findings of fact and concluded therefrom as a matter of law that plaintiffs were entitled to substantially the relief prayed for. This appeal was taken from the order of the court denying defendants' motion for a new trial.

1. Defendants insist that this case should have been tried by the court without submitting the issues to the jury. One reason assigned is that one partner is not entitled to his share in any particular estate, but only to his interest in the assets after all the debts have been paid and a full accounting had. Thompson v. Lowe, 111 Ind. 272, 12 N. E. 476. This principle does not, however, control the case at bar. The partnership had two interests, namely, one in the Brown, Treacy & Company affairs, and a second in the Brown & Bigelow affairs. It appears from the record that as to the former there had been a full and strict accounting; that such partnership had been dissolved and its assets distributed. If that accounting included the Brown & Bigelow matter, clearly plaintiffs would have been entitled to no relief. We anticipate the decision which immediately follows and here assume that the Brown & Bigelow matter was not so included. The affairs of that firm then remained to be disposed of. The case comes within the recognized principle that, when a partnership has been dissolved and the partners have accounted with each other as to everything except one item, an action at law may be maintained against the other partners for a proper share of that item. Whetstone v. Shaw, 70 Mo. 575. This position is not denied by Davis v. Davis, 60 Miss. 615, to which defendants refer us. At all events, under the circumstances of this case, and in view of the subsequent sale of the Brown interest in the Brown & Bigelow business for a fixed sum, the remedy plaintiffs here employed was a correct, and not a mistaken, one.

Another reason assigned is that the case should not have gone to the jury because of its peculiar character. We are of opinion, however, that it was for the trial court to determine whether it would

call in a jury or not. It is true that thus "it split into sections for consideration by different tribunals a case which should have been considered as a whole." None the less those considerations concerned different and easily definable issues. Their consideration as a whole was in no wise prevented by the verdicts rendered. Finally reversible error does not appear in submitting the case to the jury despite a stipulation among other things conceding the court's jurisdiction to try the case. No reason for disturbing the judgment by the trial court appears because of the "spirit" of the stipulation.

2. A more doubtful question arises in connection with the claim of substantial error in the charge of the court to the jury. The defendants requested the trial court to charge that: "In answering the second question, whether there was at any time any understanding or agreement that the contribution of $2,250 to the firm of Brown & Bigelow should be treated as a personal contribution of H. D. Brown, and that the interest in the firm of Brown & Bigelow should be considered as having been his, it is not essential for an affirmative answer to that question that there should be direct testimony that the parties met together and made such an agreement; but you have a right to consider all the facts and circumstances in the case, including the history of this transaction as here disclosed, the books of account and the entries therein contained, the conduct of the parties interested both, before, at the time of, and since, the dissolution of the firm of Brown, Treacy & Co., and to draw any fair and reasonable inference as to the understanding of the parties which is supported by this evidence, and if you believe, after considering all these facts and circumstances, that there was such an understanding or agreement, you should answer the second question in the affirmative." As to this request to charge the court wrote in effect that it had incorporated it into the general charge. In point of fact, however, only part of it was given: "You have a right to consider all of the facts and circumstances, the history of these transactions, books of account, the entries in the books of account, conduct of the parties interested up to and including the dates as set forth in the issues as I have stated to you."

At the close of the charge, and before the jury retired, defendants

called attention to this point as follows: "The defendants except to that portion of the charge of the court which in substance instructed the jury not to take into consideration the acts or conduct of the parties interested since the time of the transaction in ·determining whether or not there was any understanding or agreement as is set forth in the second question."

There is no doubt as to either the propriety or importance of submitting to the jury the acts or conduct of the parties since the dissolution of the firm of Brown, Treacy & Co.; defendants have enumerated six features as to which this evidence is material. The question then arises just what this charge meant. It is insisted that it does not exclude such subsequent conduct. The matter is not clear.

It is reasonably plain that the charge itself did not limit the jury to the consideration of facts up to the time when issues were framed only, but up to the "dates as set forth in the issues as I have stated" them. We have examined the portion of the charge given previously to this particular instruction. This does not of itself substantially clarify the situation. The court had not previously made specific reference to the conduct of the parties subsequent to the dissolution of the firm; it did, however, refer to the fact that the charge of $2,250 had remained ever since about December 1, 1900, upon the books of Brown, Treacy & Company as a personal charge against H. D. Brown. The court had expressly excluded no evidence from the consideration of the jury, with respect to the second question to which the request was addressed, although it had limited the effect of subsequent transactions with respect to the first question. The court, moreover, before and after the part of the charge under immediate consideration directed the jury to consider all the evidence and all the surrounding circumstances. Subsequently to the giving of said part of the charge, the court said: "You are justified to draw any fair and reasonable inference as to the understanding of the parties which is supported by evidence, but not from any inferences or conjectures or guesses which cannot be supported by evidence." The charge proceeded: "You are to disregard all questions that have been asked by counsel to which objections have been

sustained and are not permitted to infer what an answer would be from a question that was asked and to which an objection was sustained. You are not to consider any evidence which has been eliminated or stricken out by the court. * * * You are to consider the evidence received, and that only. * * * You are * * * judges of the facts, * * * the credibility and the credence to be given to all testimony." Construing the charge as a whole, we are constrained to hold that it comes within the rule in Steinbauer v. Stone.

Another assignment of error is addressed to a charge in which the trial court became confused as to the affirmative or negative character of the answers to be given the special questions submitted. This was clearly a mistake of language. Attention was not called to it before the jury retired. This error also falls plainly within the rule as laid down in Steinbauer v. Stone.

3. The gist of the controversy on the merits is whether the court gave proper effect to the accounting agreement and committed error in refusing to make findings of fact on motion made in connection therewith. That accounting agreement, as the defendants insist, had two aspects namely:

(1) It may be regarded a matter of evidence showing by subsequent conduct of the parties thereto admissions bearing on the question whether previously the partners during the lifetime of Mr. Treacy did not reach the agreement claimed by the evidence.

(2) It was also urged that the accounting agreement was a full and complete accounting and settlement of all firm matters and that, not being impeached for fraud or mistake or misrepresentation, it is a bar to any further claims between the partners.

So far as the first aspect of this agreement is concerned, the matter has been settled by the jury in its findings that a partnership existed as to the Brown & Bigelow affairs. Its finding was fully justified by the record.

This situation then confronts us: Brown, Treacy and Sperry were partners in the business of Brown and Bigelow. Brown conducted the financial affairs and was the bookkeeper; Treacy was the printer; and Sperry the salesman. At this time the partnership in-

terest in the Brown-Bigelow business was of the value of some $22,-500. By some means, this interest was transferred from Brown, Treacy and Sperry to Brown of Brown & Bigelow personally. This was done by bookkeeping. There is no claim, nor was there any evidence offered, of any written transfer or bill of sale. It was sought to be shown principally by Exhibit T, prepared by Brown, showing that he had charged himself with the sum of $2,250 preiously advanced by Brown, Treacy and Sperry to Brown & Bigelow on account of Brown & Bigelow and by an instrument signed by the partners at the time of the dissolution of Brown, Treacy & Company.

This began with the words "Statement of the investment assets of the late firm of Brown, Treacy & Co." Then followed a schedule of the investment assets. The total was stated to be the total of the investment assets. The Brown-Bigelow interest was not among them. Then came a statement of the amount of the partnership interest of each partner. The body of the agreement was made after a full inventory and appraisement of all the assets and a strict accounting between the partners as to their personal contribution and interest in the firm assets. The instrument purported to be, not a partition, but a complete accounting between the parties.

These instruments furnished strong basis for defendants' claim that it was understood that the Brown & Bigelow interest was the private property of Brown, and that Brown, Treacy and Sperry never were partners in the Brown-Bigelow business. It being determined by the jury, however, that they were partners, the question then arises whether Brown, the bookkeeper, by this accounting signed by the parties and by charging himself on Exhibit T with $2,250 eliminated the partnership of Brown, Treacy and Sperry in the Brown-Bigelow business and transferred to himself an interest worth $22,500. So far as Exhibit T is concerned, it was fairly a question for the jury under all the testimony whether Sperry or Treacy knew of its existence, saw, or so understood it. So far as the agreement of accounting is concerned, it was a legitimate argument to show that some agreement or understanding had been reached whereby the firm interest in Brown & Bigelow became the private interest of Brown. The jury, however, expressly found that not-

withstanding this evidence the parties did not agree that the contribution of $2,250 in the firm of Brown & Bigelow should be held and considered as a personal contribution of Brown on his personal account and that the said interest in the firm of Brown & Bigelow should be treated and considered as having been the individual property of Brown.

We are unable to see why its verdict should not be supported. No complete or satisfactory answer appears to the argument from the accounting, but, on the other hand, defendant has made no satisfactory explanation of how Brown bought an interest worth $22,500 by a charge made on the books against himself of $2,250.

The subsequent conduct of the parties was fairly a question for the jury. Taking the evidence as a whole, we feel constrained to affirm the findings of the trial court.

We have assumed that this accounting was not final; that the burden did not rest upon plaintiff to formally attack it for fraud or otherwise; and that it was not a bar until legally set aside for fraud or otherwise. This we think is the correct view.

It is to be remembered that the Brown & Bigelow matter was not expressly referred to in the instrument. "An account stated or settled is prima facie to be taken as a settlement of all valid items of debit and credit existing between the parties at the time of its statement. * * * Nor will the parties be concluded by such presumption as to matters which were not contemplated by them or which were not in fact included in the statement or settlement, though they existed at the time; but the presumption will be destroyed when the details of the settlement show that the matter in controversy was not included. Either party may show that the balance found was struck upon a partial, and not a general, accounting and either party may thereafter avail himself of a matter outside of the settlement by showing that it was not included therein." 1 Cyc. 453. The authorities cited sustain the contention.

It is to be noted that no attempt was here made to impeach or set aside the accounting agreement. That agreement was accepted as binding as to all of Brown, Treacy & Company matters proper. All the plaintiffs sought to do and were allowed to do was to show that

it did not include the Brown & Bigelow transaction. That we think they were entitled to do.

4. The controversy finally arises as to the proper amount of plaintiffs' recovery. The trial court gave to Sperry one-third of the profits received by Brown in his lifetime from Brown & Bigelow; one-third of $48,766.73, the amount received by defendants from the sale and proceeds of said firm of Brown & Bigelow, less one-third of $2,250, which was charged to the personal account of Brown. A like allowance was made to the parties succeeding to Treacy's interest. Payment thereof was directed to be made in the usual course of the administration of the estate in the probate court.

This measure of recovery defendants insist involved the misapplication of well-recognized principles of law. "Where, on dissolution of a partnership, a partner takes possession of a firm asset and treats it as his own, and carries on the business thereafter in his own name and on his own account, he is chargeable only with the value of the assets as of the date of dissolution. Parker v. Broadbent, 134 Pa. [St.] 322 [19 Atl. 631]; Cheeseman v. Wiggins, 1 Thomp. & C. [N. Y.] 595; Kinlock v. Hamlin, 2 Hill, Eq. [S. C.] 19 [27 Am. Dec. 441]; Goodburn v. Stevens, 5 Gill [Md.]1; Chittenden v. Witbeck, 50 Mich. 401 [15 N. W. 526]."

The real principle, however, is that the excluded partner has a right, at his election, to demand either the actual profits made by the partner continuing the business or his share of the capital thus employed with interest. Goodburn v. Stevens, supra. The continuing partner is chargeable with the larger amount. Therefore, where at the time of the accounting the amount due the retiring partner is less than the value of the assets of the firm at the date of the dissolution, for example, because of depreciation in the partnership real estate (Parker v. Broadbent, supra), or where at the time of the accounting nothing would be due from the partner who continued the business (Cheeseman v. Wiggins, supra), the continuing partner is chargeable with the larger amount. Obviously and consistently, a partner who had utterly renounced and repudiated the partnership when he supposed it would be a losing business and when he had no right to withdraw is in a different position. His

claim,would be "an awkward one." Being himself at fault, he would be in no position to complain of the conduct of the partners who had conducted the business. Kinloch v. Hamlin, supra, and see Chittenden v. Witbeck, supra.

In this state, for reasons of public policy, the rule is positive and general that the trustee cannot mingle the trust estate with his own, and deny to the cestui que trust the option of following the joint affairs, and availing himself of the proceeds the trustee may have realized from his improper conduct. Plaintiffs in this case retained an interest in the Brown & Bigelow affairs under the Brown & Bigelow contract. When, under that contract, Bigelow availed himself of his contract right to purchase the Brown interest, and Brown sold that interest to Bigelow at that rate, nothing had happened to exclude the plaintiffs' right to share in the proceeds of the sale. The conclusion of the trial court was, accordingly, correct.

Affirmed.

O'Brien, J., took no part.