HENRY T. CLARKE, APPELLANT, V. CHARLES R.
KELSEY, APPELLEE.

FILED SEPTEMBER 19, 1894. No. 5638.

1. **Merger of Agreements.** All verbal negotiations or under-
standings of parties had prior to the execution of the written
contract are merged in the written agreement.

2. **Contract of Employment:** CONSTRUCTION: INDEPENDENT
ENTERPRISES OF AGENT: PROFITS: ACCOUNTING: PARTNER-
SHIP. The contract of employment, set out in the opinion,
construed, and *held* that the employe was obliged to bestow all
of his time and attention, if the same were required for the suc-
cessful prosecution of the business of his employer, and that
such employe was prohibited, during the term of his employ-
ment, from engaging in any enterprise or business on his own
account of the same character as that of his employer, or which
conflicts with the interests of the latter.

3. **Trial:** ISSUES. A cause should be tried upon the issues formed
by the pleadings.

4. **An account stated** does not bar a recovery for items not
within the contemplation of the parties when the settlement
was made.

APPEAL from the district court of Douglas county.
Heard below before WAKELEY, J.

See opinion for statement of facts.

*Charles B. Keller,* for appellant:

The appellee did not have the right under the contract
to engage in the several enterprises undertaken by him
and appropriate to his own use the profits derived there-
from. (Wood, Master & Servant, sec. 111; *Thompson v.
Havelock,* 1 Campbell [Eng.], 527; *Gardner v. McCutcheon,*
4 Bev. [Eng.], 534; 1 Am. & Eng. Ency. Law, 363; *Ad-
ams Express Co. v. Trego,* 35 Md., 64; *Gillenwaters v. Mil-
ler,* 49 Miss., 150; vol. 1, pt. 1, White & Taylor, Lead-

ing Cases in Equity, 62; 1 Wait, Actions & Defenses, sec. 12; Story, Agency, secs. 210–214.)

The independent enterprises having been carried on by the appellee for his own profit in violation of the contract, he must account. (2 Lindley, Partnership, sec. 572; *Mc-Donald v. Lord*, 2 Rob. [N. Y.], 11; Wood, Master & Servant, sec. 101.)

*Hall, McCulloch & English, contra:*

The profits made by appellee in outside matters are his own. (*Wallace v. DeYoung*, 98 Ill., 638; *Geiger v. Harris*, 19 Mich., 209.).

NORVAL, C. J.

This was an action brought by the appellant against the appellee for an accounting. The petition upon which the case was tried being brief, and a question being raised as to the sufficiency thereof as regards one item in plaintiff's account, we set out the pleading in full, as follows:

"Henry T. Clarke, plaintiff, complains of the said Charles R. Kelsey, defendant, and says on or about the —— day of May, 1883, the said plaintiff employed the said defendant to go to Camp Clarke, in Cheyenne county, in this state, to take charge of the business of the said plaintiff at said point, consisting, in part, of a toll bridge across the north fork of the Platte river, which belonged to the said plaintiff, also a hotel and a stock of general merchandise which the said plaintiff for a long time had established at said point; that the said defendant under-took and agreed, in consideration of a certain salary then agreed to be paid by the said plaintiff to him therefor, to give his whole time, skill, and attention to the said busi-ness of the said plaintiff at the said point, and to receive and account to the said plaintiff for all the proceeds of said business.

"The said plaintiff also says that on or about the 1st

day of June, 1883, the said defendant entered upon the said duties as the agent and general manager for the said plaintiff of the said business at said point and had exclusive management thereof, and so continued up to about the 1st day of March, 1885; that in the course of the said business the said defendant received large sums of money from time to time belonging to the said plaintiff, amounting, in the aggregate, as nearly as plaintiff can estimate the same, to not less than $50,000; that in addition thereto the said defendant, while so employed and acting as agent and general manager of said plaintiff as aforesaid, bought and sold large quantities of furs, hides, and pelts, upon which large profits were derived, to-wit, not less than $——, and also took a contract for putting up hay, from which a large profit was derived, to-wit, not less than $2,000, and engaged in other enterprises which yielded profits; that some of the said enterprises were carried on without the knowledge of the said plaintiff at the time, and the property and means of the said plaintiff were used by the said defendant in conducting all of the said enterprises. Yet the said plaintiff says that the said defendant has failed and refuses to account fully for the amounts so received by him as such agent and general manager of said business of the said plaintiff as aforesaid; that he has received large sums of money in the course of said business which he refuses to account for and pay over to the said plaintiff, and that he refuses to render any account to the said plaintiff of his said transactions connected with his said dealings in furs, hides, and pelts, or with his said contract for putting up hay, or with any of his said enterprises which he carried on without the knowledge, at the time, of the said plaintiff, and refuses to pay over to the said plaintiff any of the proceeds of any of the said enterprises or contracts, to the damage of the said plaintiff $3,000.

"Wherefore the said plaintiff prays that the said de-

fendant may be required to render an account of all his said transactions while so acting as agent and general manager of the business of said plaintiff at Camp Clarke aforesaid, including all that he collected and received for tolls on said bridge, for sales of merchandise, postage stamps, etc., for receipts at the hotel, and including also the proceeds derived from his said dealings in furs, hides, and pelts, and from the said contract for putting up hay, and for all other enterprises engaged in while so employed as agent and general manager of the business of the said plaintiff as aforesaid, and that the said plaintiff may have judgment for the amount which may be found due him upon said accounting, which the said plaintiff believes and avers is not less than the sum of $3,000."

The defendant, for answer to the above petition, admits that he was employed by plaintiff to take charge of his store and bridge, but denies that the contract was as alleged by plaintiff; denies that he agreed to give his whole time, skill, and attention to plaintiff's business; denies that the contract was made at the time stated in the petition, but avers that the same was made about April 1, 1883, and that on the 10th day of the same month he entered upon his employment. Defendant admits that while he was in the employ of the plaintiff he received moneys as agent for said plaintiff, and avers that he has duly accounted for all sums so received, and that a full and complete settlement and accounting was had between plaintiff and defendant for all moneys so received and paid, and all moneys due the defendant, and on such accounting there was found due the defendant the sum of $469. The defendant further answering denies that he made the contracts for hay or purchased and sold furs as agent for plaintiff, but avers that he made said contracts and purchased and sold said furs for himself and on his own account, and that all profits made by virtue thereof were made with his own means, and not with funds belonging to the plaintiff. The answer

53

also denies each and every allegation in the petition contained not expressly admitted. The reply is in effect a general denial of the averments in the answer. The cause was referred to Arthur C. Wakeley, Esq., to take the testimony and report the same to the court with his findings of fact and conclusions of law. On the coming in of the report of the referee, on motion of the parties, the court referred the same back to the referee for additional findings. Upon the filing of the supplemental findings, each party filed exceptions to the report of the referee, upon consideration whereof the court, over the plaintiff's exceptions, sustained those filed by the defendant, modified the referee's report, and entered a decree dismissing the action for want of equity in the bill of complaint.

It appears that for some time prior to, and since, the year 1883 the appellant Henry T. Clarke was the owner of a store-house or hotel, stables, toll bridge, and other interests at Camp Clarke, which is located about fifty miles northwest of Sidney. The appellant was a resident of the city of Omaha, and his interests at Camp Clarke, prior to April, 1883, had been under the supervision and control of one Gustin. He employed the appellee Charles R. Kelsey as such agent or manager, and on the 6th day of April, 1883, the appellant and appellee entered into the following contract:

"This agreement, made this 6th day of April, 1883, by and between Henry T. Clarke, of the first part, and Chas. R. Kelsey, of the second part, all of Omaha, Nebraska, by which said Kelsey and his wife agree to proceed to Camp Clarke, Nebraska, and take charge of all of said Clarke's interests and property at said place and perform the labor connected therewith, said Kelsey to take charge of store, bridge, and stables, etc., and Mrs. Kelsey to take charge of house, and to do for the best interest of said Clarke for the term of one year. Said Clarke to pay said Kelsey and wife the sum of six hundred dollars for the year's services,—

that is, fifty dollars a month, payable monthly, when said services are performed,—and to furnish said parties with their living and transportation free of charge to said Kelsey and wife, time to commence when at bridge.

"H. T. CLARKE.

"CHAS. R. KELSEY."

In pursuance of said agreement the said Kelsey and his wife proceeded from Omaha to Camp Clarke, and upon reaching that place appellee took entire charge of Mr. Clarke's business, and managed the same with considerable success for the period of two years, at the end of which time Kelsey ceased to be appellant's manager. At the end of the first year's employment Mr. Clarke increased the appellee's compensation from $50 to $75 per month.

At the time said contract of employment was entered into the dealing in hay, furs, and pelts was not a part of the business carried on by appellant at Camp Clarke, nor did he have the agency of the Wyoming Stage Company. Some time afterwards appellee was appointed agent for the stage company, for which services he received a salary of $20 per month, or $362.69. Appellee also caused to be put up a large quantity of hay and bought and sold furs and pelts, all of which he claimed were on his own account and with his own means. On the hay transactions Kelsey realized a net profit of $1,675.76. He also realized a profit of $200 in the purchase and sale of furs and pelts. Appellee received from the Wyoming Stage Company, for meals furnished at Clarke's Hotel, $6.50. It is conceded that Kelsey has not accounted to appellant for any of the foregoing moneys. It is likewise undisputed that appellant furnished appellee with postage stamps and stamped envelopes to the amount of $450.60, and that the defendant has accounted to the plaintiff therefor to the amount of $152.05, and no more. The purpose of this action is to require the defendant to account, and pay over, to the plaintiff these several sums of money, as well as to account

for certain moneys which the defendant had deposited in banks in his own name during the time he was in the employ of Mr. Clarke. There is no controversy as to the amount of the profits realized by the defendant in said undertakings, the only dispute being as to his liability to account to the plaintiff therefor.

The first point argued in the briefs of counsel, as well as the first question to be considered by us, is whether the appellee had the right, under the contract above set out, to engage in the several enterprises already mentioned, and to appropriate the profits derived therefrom to his own use. From a perusal of the contract it will be observed that it contains no express stipulation, nor language from which the inference must necessarily be drawn, that the appellee was to devote his entire time to the business of the plaintiff, and that he was not to engage in any enterprise or undertaking on his own account. He agreed to take the charge and control of plaintiff's interests and property at Camp Clarke and to perform the labor connected therewith. If all his time was necessary for the successful prosecution of the business, it was his duty to bestow it; otherwise not. While it is true that an agent has a perfect right to engage in an enterprise or business for his own benefit, when not in conflict with the interest of his principal, unless the business of the agency is such that it requires the agent's whole time and attention, he may not, however, engage in an enterprise on his own account of the same as that of his principal, nor will he be permitted to neglect his employer's business for his own. (*Adams Express Co. v. Trego*, 35 Md., 64.) Appellee contends, and the bill of exceptions contains evidence tending to support it, and the referee so found, that prior to the execution of the contract of employment, and for the purpose of inducing the defendant to sign the same and accept the position of manager at Camp Clarke, the plaintiff represented and stated that there would be opportunities there for the defendant to make some money

for himself in speculations and ventures outside of plaintiff's business, and that at the same time defendant informed plaintiff that he would not accept the position, nor sign the contract for the salary stated, unless he were permitted to speculate upon his own account, where the same did not conflict with the business or interests of the plaintiff. The evidence bearing upon the question of the negotiations of the parties prior to the making of the written agreement is conflicting, but if we accept as a fact that there was a verbal understanding such as appellee claimed, it, according to the familiar and salutary rule of law, merged in the written contract. (*Hamilton v. Thrall*, 7 Neb., 210; *Dodge v. Kiene*, 28 Neb., 216.) But we do not think that the verbal understanding was any more favorable to the appellee than the written agreement. Under neither was he authorized or entitled to engage in, or carry on, any enterprise for himself which would come in conflict with the interests of Mr. Clarke which were under his charge.

We will next proceed to an examination of the different items which appellant contends the defendant should be required to account to him for. Kelsey was engaged in, or connected with, three separate and distinct hay deals, from each of which he has derived profits, and for which he has not accounted. One, the larger and the more profitable, is what is known as the "Sheidy hay contract." The facts connected therewith, briefly stated, are these: Early in August, 1884, Kelsey contracted with one Sheidy to put up for the latter a quantity of prairie hay near Camp Clarke, and during the fall of that year this contract was filled by appellee, for which he received from Sheidy $3,141.25, and after deducting all expenses connected with the transaction, a net profit of $1,383.76 was derived from the contract, which went into Kelsey's pocket. Kelsey was away from Camp Clarke during the putting up of this hay, and for the sole purpose of looking after the same, on two different occasions,—once for two days, and the other time the evi-

dence leaves us in doubt as to the precise length of time he was absent from his post of duty. It also appears that appellant and appellee at the time owned jointly a number of teams of horses which they used in carrying on the business of freighting as partners. These teams were taken to the hay field, and were used in putting up the hay under consideration, no other teams being used for that purpose. On the 4th day of August, 1884, after the Sheidy contract was entered into, and work thereunder commenced, Kelsey wrote Clarke that one Hank Odenreider, a freighter and teamster, had taken Sheidy's hay contract, and that "I have let him take the horses up there for a portion of the profits, which I thought better than to let the horses remain idle." Kelsey at that time knew that this statement was untrue, and we are fully persuaded that it was written for the purpose of deceiving Mr. Clarke, so that he might not participate in the profits of the hay contract. Instead of Mr. Clarke receiving the profits derived from the use of the teams owned jointly by Clarke and Kelsey, the latter gave the former credit on the books with $100 for their use. While the putting up of the hay was no part of the business carried on by Clarke, yet, as Kelsey devoted some time and attention, while manager for plaintiff, to the carrying out of the Sheidy contract, and as the profits derived from the transaction are traceable to the use of the teams owned by appellant and appellee jointly, and as Kelsey did not invest a dollar of his own money in the undertaking, we are constrained to hold that Clarke is entitled to share in the net profits of the venture, or receive one-half of $1,385.76, less the $100 credited to him on the books for the use of the teams. This is the same conclusion reached by the referee; but the trial court set aside his findings in that respect, holding, as a matter of law, that defendant should not be required to account for the profits realized from the Sheidy hay contract. As pertinent to the question we have been considering, we quote from Mr.

Lindley's valuable treatise on Partnerships [2d ed.], vol. 1, p. 62, the following: "When one co-owner of a chattel derives gain from its use, and those gains are attributable, mainly, or in part, to his own industry and exertions, justice to the other owners and to him requires either that the gains made by him shall be shared by all, they making him a proper allowance for his trouble and reimbursing him his expenses, or that he shall be allowed to keep the whole profits, paying the other owners a proper sum for the use of their property. Of these two modes of adjusting the rights of the parties, the first seems to be most in accordance with the course usually adopted in analogous cases. Notwithstanding, therefore, the little direct authority upon the point, the writer ventures to submit that as a general rule where one owner of a chattel derives gain from its use, he is, independently of any contract, bound to account to the other owners for their respective shares, he being allowed all proper charges and expenses." The appellee caused to be put up for the Wyoming Stage Company forty tons of hay, upon which he realized a net profit of $160. He likewise had put up thirty-two and one-half tons of hay, which he sold to himself for plaintiff Clarke at $7 per ton, upon which appellee received a profit of $130. Neither of these two items has Kelsey accounted to Clarke for, nor do we think he is required to do so. These two transactions are not similar to the Sheidy venture, for it does not appear that in either did Kelsey devote personally his time and attention to the putting up of the hay, nor were the teams, owned by Clarke and Kelsey jointly, used for that purpose. The hay purchased by Kelsey from himself for Mr. Clarke was at the price of $7 per ton, which at that time was the fair market value of such hay at Camp Clarke. The district court did not err in disallowing the $160 and $130 items mentioned above.

We will next consider the item of postage. Plaintiff furnished defendant $455.60 in postage stamps and stamped

envelopes while he was the manager at Camp Clarke, and Kelsey has only accounted for, and paid over, to his principal the sum of $152.05.   He claims that he wrote daily several letters in connection with plaintiff's business, and in prepaying the postage thereon he used stamps which Clarke had sent him, and further he had given away postage stamps from time to time during the entire period of his employment to the customers of his principal and for the benefit of the business.   In this manner the defendant explains the shortage in the stamp account and insists that he should not be required to account therefor.   This item should be rejected, for the reason that the petition contains no allegation, as a reference to the pleading will disclose, which requires the defendant to account in this action for the shortage in the postage account.   The only mention of the matter is in the prayer of the petition, and this alone is insufficient to entitle the plaintiff to an accounting.   As we understand the record, this was the view adopted by the trial court, and in which conclusion we concur.   The only safe rule is to require litigants to try their cases upon the issues presented by the pleadings.

We now inquire whether Kelsey should account for the $322.69, which he received from the Wyoming Stage Company as salary while he was agent for said company.   The record shows that prior to the time appellee entered the employ of appellant, Mr. Clarke had been agent for this stage company, and was such agent after Kelsey left Camp Clarke, but that Mr. Clarke ceased to act as agent for the company a short time prior to Kelsey's taking charge of appellant's interests.   Some three months after Kelsey arrived at Camp Clarke the stage company re-established an agency on that side of the river, and appellee was appointed agent at a salary of $20 per month.   There is no dispute as to the total amount of compensation received from the company by Kelsey, nor that he has not accounted to plaintiff for any portion of the sum so paid him.   The

business of the agency was transacted in Mr. Clarke's store by Kelsey, and during business hours, and he was thereby prevented from devoting a considerable portion of his time to the management of Mr. Clarke's business. Nothing was paid Clarke as rent for the use of his store for the transaction of the business of the stage company, nor has any deduction been made from the salary Clarke was to pay Kelsey on account of the time the latter devoted to the business of the stage company. Under this state of facts it seems clear, according to the principles of equity, that defendant should account to plaintiff for the amount of the salary paid him by the stage company. He should likewise account for the $6.50 received from the same company for the twenty-six meal tickets. These tickets were issued for meals at Clarke's Hotel. Kelsey received the money, and has never accounted for the same.

As to the $200 profits made by the defendant by dealing in hides and furs, we do not think he should be required to account, since such transaction was entirely distinct from and outside of the plaintiff's business, nor did the same in any manner conflict, or come in competition, with Mr. Clarke's interests. Appellant had never theretofore, or since, dealt in furs and hides, while each of his managers at Camp Clarke, both prior, also subsequent, to appellee's employment, had done so on his own account, with plaintiff's knowledge. Mr. Clarke's business was benefited, instead of injured, by Kelsey's purchasing furs and pelts, and the profits arising therefrom the appellee should be permitted to retain.

There is but one other matter upon which plaintiff claims an accounting. It appears that during the two years Kelsey was acting as manager he deposited money in three different banks, in his own name, said deposits aggregating over $30,000. Appellant insists that all, or, at least, a part of these funds so deposited belonged to him, and that appellee should account therefor. There is in the record

no evidence upon which to base the charge that appellee had appropriated funds belonging to his employer and deposited the same in the banks to his own credit. The balance to Kelsey's credit in neither of the banks was large at any one time. Kelsey was required to, and he did, remit to plaintiff at frequent intervals the money received by him as manager, so that no large sum was in his hands at any time belonging to Mr. Clarke. No bank account was kept in plaintiff's name. The testimony on behalf of the defendant goes to show, and the referee so finds as a fact, that during the period the defendant was at Camp Clarke he frequently received from customers at the store checks of large amounts; that in such case he would give to the customer therefor his individual checks on one of the banks where he made deposits, in various amounts, together with some money for the purpose of enabling the party to make a purchase from the store; that the checks so received by defendant were deposited by him in bank to his own credit to meet the several checks so signed by him; that the defendant received money and checks upon deposit in his individual name from cowboys and others, which he also deposited in bank in his own name, and that when the person so depositing called for his money, the defendant paid him by giving his individual check. His bank accounts were kept for the purpose of handling the checks alone referred to, and it required no funds of his own to carry on the business, since the amount of the check deposited by the customer equaled, if not exceeded, the amount of his own check drawn in payment. Plaintiff has been unable to trace a dollar of his own moneys into defendant's bank account. Plaintiff has sought to establish this branch of the case solely by attempting to show that Kelsey had no means when he went to Camp Clarke, and that about the time he left he purchased an interest in a business, paying down $2,000, and a like sum in one year thereafter. Defendant, at the time of his em-

ployment, was engaged in the grocery business in Omaha with one Williams, and from the winding up of the firm's affairs Kesley realized about $1,000; and his salary for the two years amounted to $1,500. These two sums, together with his profits realized from the fur venture and the hay deals, and his salary as agent from the stage company, amount, in the aggregate, to nearly $4,700, so that the defendant had sufficient funds with which to make the two payments of $2,000 each. The Kelseys were at no outlay for their living, as under the contract with Clarke he was to pay the expense thereof. The defendant has, in a satisfactory manner, explained where the money came from which he deposited in the banks in his own name. The proofs fail to show that he took the same, or any portion of it, from his employer, and plaintiff is not entitled to have the defendant account for said moneys.

We next consider the contention of the appellee that, by the settlement had between himself and the appellant at the time the former left the employ of the latter, Mr. Clarke is now precluded from maintaining an action for an accounting. It is in evidence that about March 1, 1884,—just prior to the time Kelsey left Camp Clarke,—he sold certain property to plaintiff and at the same time plaintiff settled for the same, as well as the balance due defendant for salary. The several items of debit and credit included in this settlement are shown by the cash book, and are undisputed. None of the matters for which plaintiff claims an accounting therein were included in, or mentioned at the time of, the settlement. They were not disclosed by the books kept by the defendant for the plaintiff, nor was the latter aware at the time of the settlement of any of the transactions upon which the suit is predicated. It is well settled that an account stated does not bar a recovery for items not within the contemplation of the parties when the settlement was made. (*Kennedy v. Goodman*, 14 Neb., 585; *Savage v. Aiken*, 21 Neb., 605.)

It follows that the plaintiff is entitled to recover from the defendant the sum of $922.07, the same being the aggregate of the three items approved and allowed by this opinion. Plaintiff should be allowed interest on said sum at the rate of seven per cent per annum from March 11, 1885, the date of the commencement of this action. The decree is reversed and the cause remanded to the district court with instructions to render a decree in favor of the plaintiff for said sum with interest.

REVERSED AND REMANDED.