[Civ. No. 4070.  Second Appellate District, Division One.—May 29, 1923.]

## THE FIRST NATIONAL BANK OF SAN PEDRO, Appellant, v. CHARLES STANSBURY, Respondent; JOHN BALCH, Cross-defendant and Appellant.

[1] Partnership—Termination—Settlement of Accounts—Action on Notes Given—Errors—Fraud—Mistakes—Accounting De Novo.—In an action on promissory notes given by one partner to another as representing the actual amount estimated by them to be due and owing to the latter upon the termination of the partnership and the settlement of their accounts, which notes were thereafter indorsed and delivered to the plaintiff bank for a valuable consideration, it is error to undertake to restate the whole of the accounts between the former partners, *de novo*, there being no claim of fraud made against the partner payee of the notes, and no error alleged or shown tainting the whole accounts found to have been mutually settled; and the plaintiff is entitled to rely upon the amount of the notes and upon the resulting inference that the maker's indebtedness should be measured by the sums stated in those notes, subject only to the right of the maker to prove, if he can, any errors which crept into the settlements by reason of mistakes which had prevented any items from being taken into consideration when the agreements of settlement were made; and the burden of proof rests upon him to establish the facts by reason of which he would be entitled to the deductions.

[2] Id.—Stipulation for Reference—Scope of Examination of Accounts.—In such action, the stipulation of the parties for the appointment of a referee to take an accounting between the former partners as to correctness of all purported settlements had between them up to and including the giving of the notes, with the further stipulation that the pleadings might be so amended as to permit the introduction of such further evidence as might be developed by the report of the referee from said accounting, did not authorize the court to entirely disregard the notes sued upon and enter into an accounting of the entire matter *de novo*.

APPEAL from a judgment of the Superior Court of Los Angeles County.  L. H. Valentine, Judge.  Reversed.

The facts are stated in the opinion of the court.

---

1.  Conclusiveness of account stated, note, 11 A. L. R. 586.

Richard C. Goodspeed and Goodspeed & Pendell for Appellant.

K. A. Miller for Respondent.

CONREY, P. J.—In the year 1911 Charles Stansbury and John Balch entered into a partnership agreement for the purpose of carrying on a contracting and paving business. That business continued until August 28, 1915, when it was terminated. Stansbury then gave to Balch a written memorandum reading as follows: ''This memorandum certifies that the undersigned, Chas. Stansbury and J. Balch, both of Los Angeles, Calif. have this day above mentioned, viz., Aug. 28th, 1915, checked up the accounts and transactions affecting the contracts known as the St. Louis—Santa Cruz —Section Three—and Fifth Street of San Pedro and all other jobs prior to this 28th day of August 1915, and have agreed by and between themselves that there is a net amount due the said J. Balch from said Chas. Stansbury amounting to twenty-one thousand seven hundred twenty-four dollars and forty-four cents ($21,724.44). (Signed) Chas. Stansbury.'' (Finding VII.)

Between August 28, 1915, and December 16, 1916, Stansbury made some payments on account of said indebtedness, and on said December 16th gave to Balch four notes, being for a total amount of $16,846, which represented the actual amount then estimated by said parties to be due and owing from Stansbury to Balch, and said notes were given unconditionally in evidence and acknowledgment thereof and for no other purpose. (Finding VIII.)

Under said partnership agreement, Balch was to furnish, and he did furnish, his tools and equipment, contribute his services, and all contracts under the partnership were to be taken in the name of Balch, who was to superintend, and did superintend, look after and employ all the men in carrying on the said partnership business, subject to advice from Stansbury. Stansbury was to, and he did, figure and advise with Balch on all contracts, furnish bonds for and finance the same, and also furnish such equipment as he then had. It was agreed that a settlement of accounts would be had after each job or contract, and that there would be allowed and paid by Stansbury to Balch interest at seven per cent

62 Cal. App.—22

per annum on all moneys furnished by Balch and on his share of the profits from said jobs left with Stansbury. Otherwise, it was agreed that no salaries or other compensation should be drawn by either party, and all profits thereunder were to be divided equally. (Finding IX.)

Prior to the commencement of said partnership the said Balch and Stansbury had mutual interests in certain contracts in which one John Radich was also a partner, and said Stansbury also made collections on certain contracts belonging to said Balch and Radich. The proceeds of said contracts and of said collections, after settlement had and made by Stansbury with Radich (on February 10, 1912, with reference to the collections on the Balch-Radich contracts, and on February 29, 1912, with reference to the Balch-Radich-Stansbury contracts), were retained by Mr. Stansbury and carried along into the accounts of the new partnership between Balch and Stansbury. (Finding XIII.)

The notes of December 16, 1916, executed by Stansbury to Balch, were thereafter indorsed and delivered by Balch to the First National Bank of San Pedro before maturity in consideration of certain loans and advancements made and to be made by the bank to Balch, and as security for any and all indebtedness then or thereafter existing from Balch to the bank, and also for the purposes of suit on said notes and collection thereof at law or otherwise by the plaintiff for the benefit of Balch after satisfaction of any and all claims of the plaintiff. The plaintiff has been at all times mentioned in the complaint in this action the legal owner and holder of each of the two notes sued upon by the plaintiff in this action, but subject to any sufficient defense that Stansbury may have to said notes or to either of them as against Balch. (Finding III.)

On the fourth day of May, 1917, the bank commenced this action (superior court No. B–50368) to recover on two of the notes, which were for the principal sum of $4,000 each. Previous to that time the bank prosecuted another action (B–49418) against Stansbury on the other two of the said four notes of date December 16, 1916.

In said action B–50368, which is the action in which this present appeal is taken, Stansbury, in addition to certain denials which raised issues upon some of the allegations of the complaint, set forth in his answer an affirmative defense

alleging the said partnership agreement and sundry transactions thereunder, by virtue whereof he claimed to have a good defense against the plaintiff's action.

At the same time with the filing of his answer Stansbury filed a cross-complaint against both the bank and Balch, wherein the cross-complainant set out the said partnership between the parties pursuant to said agreement, and demanded an accounting of the partnership matters, and that cross-complainant have judgment that said notes be discharged and satisfied, and that he also have additional relief against said Balch.

There followed an answer by the bank to the cross-complaint, an answer by Balch to the cross-complaint, a cross-complaint by Balch against Stansbury, and an answer thereto. On April 10, 1918, while the case was on trial, an amended cross-complaint was filed by Stansbury, to which separate answers were filed by the cross-defendants.

It was alleged by Stansbury that the partnership agreement never was terminated; that at the time when the notes in suit were executed, the partnership was about to enter upon a contract for certain work known as "Fountain Avenue Sewer Contract" for the sum of $47,900; that the notes in this action, and in said action B–49418, were given solely as collateral security for accommodation of the partnership and to be used in obtaining moneys from the bank for said partnership for certain stated purposes relating to their construction business, to wit, for purchasing material and paying for labor in financing a contract for the improvement of Carolina Street, at San Pedro; that at no time have any settlements been made between cross-complainant Stansbury and said Balch which were intended to be other than tentative and temporary settlements "subject to any and all corrections, inaccuracies or mistakes, when the accounts between said partners were thereafter accurately determined and settled." But the court found, not only that the notes were given unconditionally, but also that the partnership terminated on the twenty-eighth day of August, 1915, and that no work was done thereafter by the partnership.

Paragraph VI of the amended cross-complaint reads as follows: "This cross-complainant alleges that in the temporary accountings thus taken and in tentative settlements made, the books and accounts were not in such condition to dis-

close an accurate statement of the partnership affairs, and that since the said tentative settlements have been made this cross-complainant alleges he has discovered and finds that from time to time mutual mistakes had been made, which were not known at the time tentative settlements were had, and large sums of money have been paid by this cross-complainant for and on behalf of said partnership that at no time have been taken into consideration or allowed as credits to this cross-complainant from the said partnership, and through such mutual mistake, accident, inadvertence, and not taken into consideration, the said partnership is indebted to this cross-complainant in the following particular items, to-wit; . . . Which above items amount in all to the sum of $6,316.04, no part of which has been paid by the said partnership to this cross-complainant, nor considered in any tentative settlements heretofore made, and for which the said partnership is now indebted to this cross-complainant, and by the mistake and through the said cross-complainant relying upon the figures of cross-defendant John Balch, same were overlooked and mistakingly not considered in any tentative settlements so made.''

In paragraph VII, cross-complainant alleged the payment of attorney fees on behalf of the partnership, the exact amount and nature of which he could not then ascertain or state.

Paragraph VIII reads as follows: ''This cross-complainant further alleges that from time to time large amounts have been expended by this cross-complainant for tools and equipment, to wit: For concrete cement forms purchased and paid for and delivered to the said partnership, amounting to the sum of $2,902; large amounts of small tools and equipment and unused material paid for, owned and unaccounted for by the said partnership and now in the possession of the said John Balch, belonging to the said partnership, for which there has been paid from said partnership funds a sum of approximately $5,000; all of which said tools and equipment are now in the possession of the said Balch and for which sums so advanced by this cross-complainant and from the partnership assets, equipment and tools, the said John Balch has failed and refused to account to this cross-complainant. That in addition to the above items, the said cross-defendant John Balch has received from various

sources for and on behalf of the said partnership, and now has in his hands large sums of money, and purchased for and on behalf of the said partnership from the said partnership funds large amounts of other equipment and tools and unused material, the exact amount, nature and extent of which it is impossible for this cross-complainant to say until a full and complete accounting is had between the said partners, and which this cross-complainant is informed and believes is of the amount and value of many thousands of dollars."

Paragraph IX declares· that on the Carolina Street contract and the Fountain Avenue sewer contract, and other contracts of the partnership, amounting to $65,000 or more, and all of which have been completed, large sums of money had been collected and large profits made therefrom, for which Balch had failed and refused to account; that by reason of said transactions Balch was indebted to the partnership and that upon accounting it would be found that he was so indebted to the partnership and to cross-complainant in a large sum. (By reason of the court's finding that the partnership terminated on August 28, 1915, this paragraph IX need not be further considered.)

Paragraph X of the cross-complaint reads as follows: "Said cross-complainant further alleges that none of the said items herein mentioned have been paid nor credited by the said partnership to this cross-complainant in any tentative or temporary settlements had between this cross-complainant and the said John Balch, and the total sum of said items specifically mentioned are due and owing from the said partnership to this cross-complainant, together with all other sums that an accounting may show when same has been accurately taken of the assets and profits from the said partnership, amounting to, as this cross-complainant is informed and believes and so alleges, more than any indebtedness due or claimed to be due from the said partnership or this cross-complainant to the said John Balch."

As a second cause of action, cross-complainant, in addition to the allegations of his first cause of action, alleged that Balch was indebted to him on open book account for certain moneys paid out, at the instance and request of Balch (stating the several items), amounting to the total sum of $764.90.

Cross-complainant alleged that no part of these items had been repaid and that the same were now due and owing from Balch to Stansbury.

In July, 1918, both of said actions, B–49418 and B–50368, were pending in the superior court. The two cases were consolidated and were tried and submitted for decision. Thereafter the parties entered into a stipulation (filed August 13, 1918) to set aside the submission and the order consolidating said causes, and providing that the plaintiff bank have judgment in its favor in said action B–49418. In case No. B–50368 it was further stipulated that a referee be appointed to take an accounting between Stansbury and Balch at the cost of Stansbury "as to the correctness of all purported settlements had between said John Balch and said Charles Stansbury up to and including the giving of the notes of December 16, 1916, and that said referee report to the court any additions, deductions, errors, omissions, miscalculations, corrections, or mistakes in said accounts or pretended settlements, with a finding showing the true conditions of the accounts between said Stansbury and said Balch growing out of their partnership relations in the contracting business, or with Radich, Balch & Stansbury, or otherwise, and the true amount due from one to the other, after deducting all proper offsets and credits to date, that said settlements and notes be corrected accordingly; said referee, so to be appointed, to be further authorized and directed to examine all books of account, check books, stubs, bank books, ledger sheets and any and all other accounts kept by the said John Balch and the said Charles Stansbury; to subpoena witnesses or expert accountants, together with such other books and accounts, and to hold such other hearings as may be necessary for the purpose of ascertaining the true status of said partnership relation between said John Balch and said Charles Stansbury." It was further stipulated that the pleadings might be so amended "as to permit the introduction of such further evidence as may be developed by said report of said referee from said accounting, and such other proceedings may be had according to the evidence heretofore taken and such further evidence offered by either party before the court and upon the pleadings as amended; that said case be continued until the report of the

referee be made and filed and the further order of this court, notice thereof being hereby waived."

Pursuant to said stipulation, an order of reference was made appointing the referee named in the stipulation. The order provided that the referee so appointed "for the purpose of taking an accounting between said Charles Stansbury and John Balch as to the existence of said alleged errors and as to the correctness of all settlements had between said parties up to and including the giving of the notes of December 16, 1916, and that said referee report to the court any and all additions, deductions, mistakes, miscalculations and errors which have occurred in the said settlements, or any of them, or in any accountings had between said parties, which have been or may to the satisfaction of said referee be shown from the testimony, books and papers heretofore offered in evidence in this cause and from any and all books, papers, checks, or accounts of the said Charles Stansbury and said John Balch, or such other evidence as may be properly laid before said referee. Said referee shall within thirty days make a report to the court showing as nearly as he may be able, the corrections that should be made in said alleged settlements and including therein a statement showing as nearly as said referee can determine the true condition of the account between said Stansbury and said Balch up to the giving of said notes." The referee's report was not filed until the twenty-fourth day of September, 1919. The case came before the court for hearing upon the report of the referee and exceptions filed by the respective parties. Further testimony was given and the cause was submitted upon said testimony and the report of the referee and the evidence taken by the referee and the books and records of the parties, whereupon the court made its findings of fact and conclusions.

The court found that during the pendency of the action all of the bank's claims against Balch for which it held the notes in suit as collateral security had been paid and that the plaintiff continues to hold said notes only for the purpose of collection and for the use and benefit of Balch.

The court found that the partnership existed under the agreement to which we have referred and found the fact of settlement made which resulted in the execution of said notes of December 16, 1916; also that in the settlement with

reference to the Radich jobs and in the settlements between Balch and Stansbury, and particularly in the settlements made on November 27, 1912, August 28, 1915, and December 16, 1916, by reason of the fact that the books and accounts were not in such condition as to disclose an accurate statement of the partnership affairs, various mutual mistakes were made in favor of said Balch and to the prejudice of said Stansbury, which said mutual mistakes were discovered since said notes were given; that since the giving of said notes, the said Stansbury has also been entitled to credits. (Finding XIV.) Without defining what these mistakes were, and without using them as the basis of any deductions from the amounts of the notes, the court, by its referee and by evidence taken before the court, made an independent examination of the transactions and accounts of the partnership, and made its findings and judgments pursuant to that investigation.

In finding XVIII the court refers to the fact that the balance found by the referee in his report was the sum of $3,309.06 in favor of Balch, "but the court finds that the same is subject to certain corrections for clerical errors, miscalculations and mistakes in the debits and credits thereof and in the allowances to the two partners, and upon further hearing before the court upon the report of the said referee, the court finds 'that said report should be modified by deducting from the balance found due to said Balch of $3,309.06, total credits due to said Stansbury amounting to $1,740.81, as hereinafter specified, leaving an indebtedness, which the court finds to be due and owing from the said Stansbury to the said Balch in full settlement of all partnership claims of the said Balch against the said Stansbury, amounting to $1,569.10, which, the court finds, is entitled to draw interest at seven per cent per annum from the 16th day of December, 1916; that the report of the said referee after deducting the above credits is in all other respects confirmed and adopted as the finding of this court." The modifications made in said referee's report are then stated in detail, covering eight items of the report.

In finding XIX the court determined that Stansbury should pay the costs of this action and the fee of the referee ($500) "and the large mixer is the property of Charles

Stansbury, and the steel forms, rings, small mixer and other tools are the property of John Balch.''

Judgment was entered accordingly and it was therein provided that upon payment of the judgment the notes in suit be canceled and that the interests and claims of Balch and Stansbury growing out of said partnership ''be and they are declared to be hereby fully settled and determined.'' From the judgment so entered the plaintiff bank and the said John Balch have appealed.

[1] Primarily, appellant relies upon the proposition that the court erred in undertaking to restate the whole of the accounts between Balch and Stansbury, *de novo,* there being no claim of fraud made against Balch, and no error alleged or shown tainting the whole accounts found to have been mutually settled, and also because of there being no complete statement made or possible. It is true that neither the defense nor the cross-complaint rests upon any claim of fraud. No facts are alleged by respondent tending to show any erroneous method or principle involved in the settlement as made whereby the entire accounting became unreliable or erroneous. Respondent rested his claims upon two contentions, the first of which is that the so-called settlements were only tentative and temporary—really not settlements at all; and the second is that respondent is entitled to sundry credits, which by mistake were omitted from the computations which resulted in the execution of the notes in suit. The court having determined that the partnership terminated on the date of the settlement of August 28, 1915, and that after some further payments had been made the notes were given unconditionally, the only further questions in the case related to the alleged mistakes in the settlements as made, and the amount by which the correction of those mistakes would reduce the indebtedness shown by the notes. In this state of the case appellants were entitled to rely upon the amount of the notes and upon the resulting inference that respondent's indebtedness should be measured by the sums stated in those notes; subject only to the right of respondent to prove, if he could, any errors which had crept into the settlements by reason of mistakes which had prevented any items from being taken into consideration when the agreements of settlement were made. The burden of proof rested upon respondent to establish the facts by

reason of which he would be entitled to these deductions. In addition to the particular errors claimed as pointed out in the pleadings of respondent, it will be remembered that in the stipulation for a reference it was agreed in substance that if in the course of the investigation by the referee facts should develop making it necessary so to do, the pleadings might be so amended as to permit the introduction of further evidence concerning the alleged errors. In other words, it was contemplated by the pleadings of respondent and by the stipulation and order, that the inquiry should be conducted for the purpose and only for the purpose of correcting any mistakes, miscalculations, and errors which had occurred in the said settlements and thereby had been carried into said notes.

We cannot see that counsel for respondent would be benefited by the acceptance of his theory that these notes do not represent the result of an "account stated." For his right to insist upon a reopening of the question concerning the amount due on a promissory note cannot be more favorable than his right to inquire into the circumstances of an account stated. Therefore, we think that the rules concerning the surcharging or falsifying of such an account, as shown by the decisions presented to us by counsel for appellant, are applicable to this case. In the early case of *Branger* v. *Chevalier,* 9 Cal. 353, 361, it was held that accounts stated may be opened and the whole account taken *de novo,* for gross mistake, in some cases. "But this can only be done when the gross error affects all the items of the transaction. In case the clear mistake only affects a portion of the items of the stated account, it will be permitted to stand, except in so far as it can be impugned by the party alleging the error. And when the party who seeks to go behind the stated account, goes into particulars and specifies the items improperly charged or omitted, he is confined to those items, and the remainder of the account must stand." In that case the court further says: "In this case certain errors were specified in the complaint and the plaintiff should have been confined to the items mentioned. The order of reference cannot go beyond the pleadings of the parties; and then the mistake should be clear and material before the court could allow the party even to surcharge and falsify. It is a very dangerous practice to go behind

stated accounts, especially as between partners, who alone understand their complicated affairs, and the mode in which their books are kept. If all partnership books were well and carefully kept, upon the same system, then the practice of opening up accounts would not be so doubtful. (*Chappedelaine* v. *Dechenaux*, 4 Cranch, 306, 308 [2 L. Ed. 629, see, also, Rose's U. S. Notes]; *Wilde* v. *Jenkins*, 4 Paige (N. Y.), 481, 495.)''

In *White* v. *Thompson*, 40 Cal. App. 447, 449 [180 Pac. 953, 954] (first district, division one), the rules governing the correction of an account stated are summarized as follows: ''An account stated does not bar a recovery for items not within the contemplation of the parties when the settlement was made (*Clarke* v. *Kelsey*, 41 Neb. 766 [60 N. W. 138]; *Lawler* v. *Jennings*, 18 Utah, 35 [55 Pac. 60]); nor for those omitted by mistake; nor for such as were left open for further consideration. (*Waldron* v. *Evans*, 1 Dak. 11 [46 N. W. 607].) Parties to an account stated, signed by them, are not concluded by the presumption that it was a final settlement of all valid debts, debits, and credits, as to matters which were not contemplated by them, or which were not included in the settlement, though they existed at the time. (*Treacy* v. *Powers*, 112 Minn. 226 [127 N. W. 936].) Where an account has been adjusted by the parties, if any mistake is subsequently discovered, the whole account need not be opened and readjusted, but the mistake may be corrected and the rights of the parties readjusted as to such mistake. (*Carpenter* v. *Kent*, 101 N. Y. 591 [5 N. E. 787].)''

In *Gardner* v. *Watson*, 170 Cal. 570 [150 Pac. 994], the court made a statement covering what in law constitutes an account stated. It was there held that the writing constituting an account stated need not aver or at all contain the grounds and reasons for the conclusion and declaration expressed. It is a complete account stated if it contains a signed and written acknowledgment of a present, unqualified indebtedness or liability with a promise to pay a named sum. With reference to such an account, the court there said that while it is open to a defendant to repel the legal effect of the account stated by pleading and proof of its procurement through fraud, duress, mistake, or other grounds cognizable in equity for the avoidance of an instrument, yet it is not

open to a defendant to attempt to defeat the legal effect of such a contract by showing a lack of consideration in any other way. "Thus, it is not open to a defendant in such a case merely to show that the account stated was based upon a disputed claim of the plaintiff's which claim subsequently proved to be invalid. *Nor would it be open to a defendant to show that the amount justly due was very much less than the amount named in the account stated.*"

It is not necessary to make a detailed statement of the various items of the accounting, as made by the referee and by the court, in order to exhibit their resulting effect in determining the amount of the judgment. It is sufficient to say that the judgment is solely the result of an accounting which purports to cover all of the transactions of the partnership and to arrive at a balance due as shown by the books and papers of the partnership and by testimony concerning the same, without giving to appellants the benefit of the fact that their right of action is based upon the notes held by them, and without any findings directed to the particulars in which errors occurred in the settlements made between the partners and based upon which settlements the notes in suit were executed.

[2] It was contended by counsel for respondent and was held by the court at the trial that by reason of the stipulation for a reference and the order of reference based thereon, the court was authorized "to enter into an accounting of this entire matter." And when counsel for appellant in discussing the referee's report stated the rule that a settlement made in good faith is presumed to be a good and fair settlement and that the presumption is in favor of that settlement, the court replied: "I think your stipulation wiped out the presumptions." We are of the opinion that the stipulation, made as it was in view of the pleadings of respondent and the affirmative claims made by respondent, is not subject to the construction thus put upon it by the court. If it had been intended to wipe out the notes entirely and to wholly disregard the settlements made, it would have been useless to provide in the stipulation, as it was provided, that the accounting should be taken as to the "correctness of all purported settlements." Likewise, it would have been unnecessary to further stipulate for amendments to the pleadings, as further facts affecting the subject matter should be

developed by the report of the referee. By reason of the erroneous theory thus adopted, and according to which the case was tried, notes received for a valuable consideration, and not in any way tainted with fraud, have been, by the judgment, reduced to less than half of their face value, without any finding of the facts whereby such reduction may be justified.

The judgment is reversed, and it is hereby directed that a new trial be had of the issues presented with relation to credits claimed by respondent by reason of errors or omissions in the settlement of said partnership affairs, whereby respondent claims the amount of said notes should be reduced. Thereupon, findings having been made covering said issues, a new judgment may be entered.

Curtis, J., concurred.

HOUSER, J., Dissenting.—I dissent. To my mind, the stipulation to which reference is herein made constitutes a complete waiver as to any rights arising out of the ''account stated'' and fully authorizes an entire accounting *de novo*.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on July 26, 1923.