[Civ. No. 355.   Fifth Dist.   Aug. 31, 1964.]

CALIFORNIA MILLING CORPORATION, Plaintiff and Appellant, v. WILLIS P. WHITE, Defendant and Respondent.

James G. McCain for Plaintiff and Appellant.

Fuller, Christenson & Kralowec and Don G. Christenson for Defendant and Respondent.

CONLEY, P. J.—The plaintiff appeals from that portion of the judgment which, on the counterclaim, awards the defendant the sum of $5,619.56. On the complaint itself, irrespective of the counterclaim, the judgment is in favor of the plaintiff on a guaranty executed by Mr. White in connection with turkey raising by his son and daughter-in-law in the sum of $4,536.36, together with interest. No appeal was taken by either party from the judgment insofar as it relates to the complaint.

The defendant, Willis P. White, is a farmer who raised turkeys on three ranches located at Tipton, Porterville, and Springville. Since the early part of the 1950's, he has had a business relationship with the plaintiff. The agreements were annual during the early part of this period and until the three-year agreement involved in the present litigation was entered into in 1960; this writing embraced two contracts, one of which related to turkey raising and the other provided for the loan of money by plaintiff to defendant for the purpose of building structures to house additional birds. These two contracts were separately signed but physically constituted one set of papers; the loan contract was secured by a trust deed on Mr. White's real property.

The turkey growing agreement provided that in the year 1960, California Milling Corporation would deliver 48,000 turkeys to Mr. White at the three ranches operated by him. The evidence shows without conflict that California Milling Corporation failed to deliver a total of 7,354 poults during 1960, and this partial breach was the subject matter of the counterclaim in the present action. The items going to make up the judgment on the counterclaim are not objected to as such; in fact, there was a stipulation during trial that if any judgment were granted on the counterclaim, it should be for the sum mentioned in the findings and judgment.

The only reason for reversal urged by plaintiff's counsel is that prior to the filing of the present suit there was an executed account stated between the parties and that, consequently, there was a final, complete and binding settlement of their total financial relationship prior to the present action, which precluded Mr. White from urging a counterclaim in this suit. The basic defense assumes several forms in the litigation; it is alleged that there was a previous accord and satisfaction, that there was a waiver which prevented Mr.

White from pleading the counterclaim in the present action and that he was estopped to urge his claim in the present suit. Essentially, the position taken by the plaintiff in opposition to any recovery on the counterclaim is that the financial relationship between the parties was previously brought to an end through a balancing of accounts and a mutual agreement concerning the total amount due from one to the other, and that payment of this sum constituted a complete and final settlement of their financial arrangements, which precluded any later claim such as that urged on the counterclaim.

The California Milling Corporation delivered to the defendant by mail a statement dated March 5, 1961, the basic provisions of which read as follows:

"WE HAVE THIS DAY CREDITED YOUR ACCOUNT AS FOLLOWS:

"Total Profit from 1960 Operations including Guarantee Payments:

| | |
|---|---:|
| Porterville Ranch Flock #1 | $1388.80 |
| Porterville Ranch Flock #2 | 2338.79 |
| Springville Ranch Flock #1 | 3552.30 |
| Springville Ranch Flock #2 | 8097.65 |
| Tipton Ranch Flock #1 | 6839.55 |
| Tipton Ranch Flock #2 | 7146.03 |

$29,363.12

"Less Guarantee payments from 1960 operations:

| | |
|---|---:|
| Porterville Ranch Flock #1 | $ 906.20 |
| Porterville Ranch Flock #2 | 790.10 |
| Springville Ranch Flock #1 | 1999.85 |
| Springville Ranch Flock #2 | 1775.66 |
| Tipton Ranch Flock #1 | 2719.15 |
| Tipton Ranch Flock #2 | 1797.01 |

$ 9,987.97

"Total Net Profit from 1960 turkey operations $19,375.15

"DISTRIBUTION OF NET PROFIT:

"Seventy-Five percent (75%) to Grower, W. P. White $14,531.36

"Twenty-Five percent (25%) to California Milling Corporation $ 4,843.79

$19,375.15"

On December 2, 1961, another statement was sent by mail to the defendant:

"STATEMENT
CALIFORNIA MILLING CORPORATION
1861 East 55th Street
P. O. Box 3488, TERMINAL ANNEX
LOS ANGELES 54, CALIFORNIA
LUDLOW 5-0131

"W. P. White
Porterville, California

"December 2, 1961
"Interest 6%
to 12/2/61

| "DATE | | CHARGES | CREDITS | BALANCE DAYS | AMOUNT |
|---|---|---|---|---|---|
| "12/2/61 | Principal from 1960 operations | 19094.75 | | | |
| | Interest from 1960 operations | | | | 3491.43 |
| | "1961 operations: | | | | |
| "12/15/60 | Invoice 7542 | 5.06 | | 352 | .30 |
| 1/4/61 | " 8551 | 2000.00 | | 322 | 107.32 |
| 1/18/61 | " 8722 | 91.90 | | 318 | 4.87 |
| 12/20/60 | " 7508 | 8000.00 | | 347 | 462.56 |
| 2/18/61 | " 9951 | 2000.00 | | 287 | 95.64 |
| 4/6/61 | " 11625 | 94.64 | | 240 | 3.78 |
| 4/24/61 | " 12302 | 56.06 | | 222 | 2.07 |
| 4/12/61 | " 11699 | 1029.60 | | 234 | 40.15 |
| 4/24/61 | " 12303 | 4.78 | | 222 | .17 |
| 6/5/61 | " 13951 | 86.86 | | 180 | 2.61 |
| 6/26/61 | " 14675 | 6.85 | | 159 | .18 |
| 7/19/61 | " 15572 | 35.41 | | 136 | .81 |
| 8/16/61 | " 16803 | 5.78 | | 108 | .11 |
| | "Total Principal | 32511.69 | | | |
| | "Total Interest | | | | 4212.00 |
| | "Total Owing | | | | 36723.69 |

"This statement represents only the
charges for money advanced for ex-
penses and purchases *outside* the scope
of our Turkey Growing Agreement
"Interest at $5.42 per day after December 2, 1961."

On January 2, 1962, Mr. White wrote to the corporation
calling attention to the fact that it had not given him credit
for some 29 tons of hay which he had purchased for the
turkey operations and which he thought the corporation should
pay. In his letter, he stated:

"California Milling Corp.                   "Porterville, Calif.
Corcoran, California                       Jan. 2, 1962

"Gentlemen:

"On your last statement you still did not show credit to me for 29 tons of hay which was purchased in 1960 for that years turkey operation. During the past year I have repeatedly requested this credit.

"Please forward to the Bank of America, Porterville, attention Mr. Fred Pierre, Manager, your letter of demand as regards total indebtedness pertaining to the deed of trust you hold, accompanied by deed of reconveyance of the deed of trust and release of chattel mortgage (if any) for payment from the Bank.

"Your prompt attention in this matter will be appreciated.

"Yours truly,
/s/ W. P. White
Rt. 1, Box 199
Pixley, California"

In response to that letter, the appellant mailed to the bank another statement dated January 18, 1962, as follows:

"STATEMENT
CALIFORNIA MILLING CORPORATION
1861 East 55th Street
P. O. Box 3488, TERMINAL ANNEX
LOS ANGELES 54, CALIFORNIA
LUDLOW 5-0131

"W. P. White
Pixley, California                         January 18, 1962
                                           "Interest—6%

| "DATE | | CHARGES | CREDIT | BALANCE |
|---|---|---|---|---|
| "12-30-61 | Interest Forward | 4363.76 | | |
| 12-30-61 | Principal Forward | 32511.69 | | |
| 1-18-62 | Credit for Hay | | 572 | |
| 1-18-62 | Charge for one Hen turkey—15 lbs. | 3.00 | | |
| 1-18-62 | Interest 12-30-61 to 1-18-62 | 102.98 | | |
| | "Total owing on January 18, 1962 | | | 36409.43 |
| | "Interest at the rate of $5.32 per day for each day after January 18, 1962 | | | |

"Approved for Payment
/s/ Willis P. White."

Following the instructions of Mr. White, the Bank of America drew a cashier's check in favor of the California Milling Corporation for $36,494.55, and sent it to the corporation; as a result, the trust deed on the White land which had been given to secure the advances made under the contract for the building of turkey sheds and other structures was shown as paid, and its lien on his land was released. Although the basic contract between the parties had provided for a continuance of their relationship for three years, it did contain the following provision: "This agreement is written for a period of three years, however, if at an earlier date, Grower should pay all amounts due Supplier, this agreement may be cancelled and a new agreement entered into for subsequent periods."

The record indicates that there were signs of tension and animosity between the parties in 1961; the company was dissatisfied with some of the methods employed by Mr. White, and, among other things, the milling corporation had considered the possibility of buying the White land, but an agreement was never reached as to the sale price. Their relationship at that time was such that a termination of their contractual arrangement seemed desirable. This fact is said by Mr. White's attorney to indicate that in order to make financial arrangements with some other person for the continued raising of turkeys by him, it was the desire of Mr. White to have the existing trust deed released of record; it may explain why Mr. White did not make demand at that time for the damages resulting from the failure of the corporation to deliver all of the poults called for by the contract.

The trial judge was explicit in his findings; he reached a definite determination that the claim urged in the counterclaim was proper. His memorandum decision contains the following:

"*Defendant's Counterclaim:*

"Plaintiff agreed to provide defendant with a specified number of turkey poults. Plaintiff assumed the risk of its inability to deliver that number, since the agreement did not provide otherwise. Plaintiff waived the defense of impossibility.

"Defendant's counterclaim for loss of profits is not barred by an account stated or by accord and satisfaction:

" (1) Plaintiff's accounting under the turkey growing con-

tract was for sales of turkeys after deducting charges for poults and supplies delivered.

"The account did not purport to cover any claim for damages owed defendant by plaintiff arising out of the non-delivery of poults, nor did the parties mutually so intend, nor would the amount admittedly owed be sufficient consideration to support the inclusion thereof in such account stated.

"(2) As to defendant's pay-off to plaintiff on the note and trust deed, there was no agreement in writing to take less than an amount admittedly owed or to settle an amount in dispute, nor did the same relate to the turkey growing indebtedness according to the demand.

"&ast;     &ast;    &ast;    &ast;    &ast;    &ast;    &ast;    &ast;

"As defendant's counterclaim exceeds plaintiff's claim, let defendants prepare findings, conclusions and judgment in accord with the foregoing."

The court found that it was not true that there was an account stated on or about January 18, 1962; and, also, "That any account rendered by Plaintiff to Defendant pertained only to poults actually delivered"; that there had not been a final settlement on or about January 18, 1962; that the defendant was not estopped to urge the counterclaim; that there was no waiver of any right on the part of the defendant, and that no accord and satisfaction between them was ever reached.

In plaintiff's opening brief, it is said: "Appellant realizes that questions raised by account stated, accord and satisfaction, waiver and estoppel are in most cases factual and the determination of the Trial Court with respect thereto in the majority of situations will prevail. However, Appellant feels most strongly that only one reasonable inference can be adduced from the uncontradicted written and oral evidence, namely, that the transaction of January 18, 1962, between Appellant and Respondent represented a complete parting of the ways without reservation on the part of either."

After a careful research of the contents of the transcripts and the briefs, we conclude that the trial judge had ample grounds to justify the conclusions set forth in his findings.

In 1 Corpus Juris Secundum, Account Stated, section 1, page 693, it is said: "An account stated is an agreement that the balance and all items of an account representing the previous monetary transactions of the parties thereto are correct, together with a promise to pay such balance. It must show a balance due, the amount thereof, and from whom it is

due. It may be made wherever the relation of debtor and creditor exists."

██ Obviously, a partial settlement is not a complete account stated, or as it is sometimes said, there may be what is called an account stated as to a part of the financial relationship of the parties without arriving at a balance as to all of their monetary dealings. ██ An agreement with respect to the balancing and payment of accounts is regulated by the same considerations as contracts generally. If the parties settle their financial relationship with respect to only part of their transactions, their talk or their writings cannot be extended to cover all of their previous dealings without a contract, express or implied, to that effect. For example, the complaint in the present case alleges that Mr. White was liable on a guaranty of the contract of his son and daughter-in-law. It has not been claimed, and it cannot possibly be urged that the so-called account stated also covered the guaranty for the son. It was not contemplated by the parties, or either of them, that that liability was included in whatever settlement took place between them. The defendant somewhat similarly contends that it was never his thought or appellant's that his unliquidated claim for the nondelivery of the poults was actually involved in the partial settlement which did take place.

██ In 1 American Jurisprudence 2d, Accounts and Accounting, section 22, at pages 397-398, it is said: "The prevailing view appears to be that an account stated need not cover all the dealings or all the claims between the parties concerned, . . . Under the general rule the mere fact that one or more items in an account are disputed does not prevent the account from becoming an account stated as to all the items admitted to be correct. In the last analysis, an account stated is nothing more than an agreement between the parties as to the items considered. If the agreement is that the balance found is final and complete, it constitutes an account stated as to every item; but, parties have the right to make such lawful contracts as they choose, and therefore to agree as to certain items and leave open for adjustment or adjudication other items. However, there is no account stated where there is only a partial settlement without arriving at a balance." (See also: *Tuggle* v. *Minor*, 76 Cal. 96, 100 [18 P. 131]; *White* v. *Schrafft*, 94 N.H. 467 [56 A.2d 62, 65]; *Nello L. Teer Co.* v. *Dickerson, Inc.*, 257 N.C. 522 [126 S.E.2d 500, 507]; 175 A.L.R. 252.)

■ Generally speaking, there cannot be an account stated which includes an unliquidated claim. (*Tuggle* v. *Minor, supra,* 76 Cal. 96; *Konda* v. *Lamkin,* 19 Cal.App.2d 635 [66 P.2d 164]; 1 Am.Jur., Accounts and Accounting, § 18, pp. 273-274.)

■ The modern view is that if the settlement of an unliquidated claim, either in contract or in tort, is specifically involved in an account stated, and it is agreed between the parties that a sum certain is due from one to the other because of that fact, such agreement could be considered as part of the material leading to an account stated. ■ In the present case, the claim for failure to deliver a specified number of turkey poults was unliquidated at the time of the repayment by the defendant to the plaintiff of the balance due on the loan by the corporation. Appellant's claim that the amount due for a failure to deliver all of the required poults was actually liquidated because the elements of the damages were readily agreed to during the trial is ingenious, but specious; there had then been no agreement whatsoever between the parties with respect to any sum that might be due from the corporation to the defendant for failure to deliver the poults. ■ It stands to reason that unless a claim, in either contract or tort, is reduced to a definite amount by agreement between the parties, it cannot legitimately form a portion of an account stated. (1 Am.Jur.2d, Accounts and Accounting, § 26, p. 400; 6 A.L.R.2d § 2, p. 114, § 5, p. 121.)

■ In any event, the negotiations of the parties, the subject matter thereof, and the assent to any balance are factual subjects which the trial court had a legitimate right to determine. We cannot interfere with the conclusion reached by the trial judge that there was no complete account stated, and that it was not the intention of the parties to include this claim in the settlement which they reached concerning a portion of their financial relationship.

As is said in *White* v. *Thompson,* 40 Cal.App. 447, 449-450 [180 P. 953]: "An account stated does not bar a recovery for items not within the contemplation of the parties when the settlement was made. (*Clarke* v. *Kelsey,* 41 Neb. 766 [60 N.W. 138]; *Lawler* v. *Jennings,* 18 Utah 35 [55 P. 60]); nor for those omitted by mistake; nor for such as were left open for further consideration. (*Waldron* v. *Evans,* 1 Dak. 11 [46 N.W. 607].) Parties to an account stated, signed by them, are not concluded by the presumption that it was a final settlement of all valid debts, debits, and credits, as to matters which

were not contemplated by them, or which were not included in the settlement, though they existed at the time. (*Treacy* v. *Powers,* 112 Minn. 266 [127 N.W. 936].)'' (See also: First *National Bank* v. *Stansbury,* 62 Cal.App. 336, 347 [217 P. 91]; *Vaughan* v. *County of Tulare,* 56 Cal.App. 261, 268 [205 P. 21].)

What has been said with respect to the claim of account stated is applicable with equal force to the separately suggested defense of accord and satisfaction. Whether or not there was actually a contract between the parties which constituted a complete and final settlement between them is a question of fact for determination by the trial court.

The appellant claims that the defendant waived his right to sue on the counterclaim. This again, depends upon the factual showing, and there is no proof as a matter of law of any express or implied waiver, which would warrant setting aside the contrary finding of the trial court. (See: *Verdier* v. *Verdier,* 133 Cal.App.2d 325 [284 P.2d 94]; *Hopson* v. *National Union etc. Cooks & Stewards,* 116 Cal.App.2d 320, 325 [253 P.2d 733]; *Newman* v. *Albert,* 170 Cal.App.2d 678 [339 P.2d 588]; 51 Cal.Jur.2d, Waiver, § 9, p. 319.)

This observation also applies to the claim of estoppel. (*General Motors Acceptance Corp.* v. *Gandy,* 200 Cal. 284 [253 P. 137].)

It is elementary that when there are two parties to a contract and one of them does not do all that he is required to do under the agreement, the other party may nevertheless fully perform his part of the bargain and then hold the defaulting party liable for damages. Appellant relies on certain cases in which there was not only a failure to make immediate financial claim for a breach, but additional factors which made it inequitable for the claimant at a later date to urge his contractual rights. That situation is not present here. In this case, there was nothing to compel the trial court to find the elements of an estoppel which are thus set forth in 4 Witkin, Summary of California Law, Equity, section 94, page 2871:

''It has been said that there must be (1) a representation or concealment of material facts (2) made with knowledge, actual or virtual, of the facts (3) to a party ignorant, actually and permissibly, of the truth (4) with the intention, actual or virtual, that the latter act upon it; and (5) *the party must have been induced to act upon it.* (*Wood* v.

*Blaney, supra,* 107 Cal. 291, 295 [40 P. 428]; and see also *Seymour* v. *Oelrichs* (1909) 156 Cal. 782 [106 P. 88, 134 Am. St.Rep. 154]; *Los Angeles* v. *Babcock* (1929) 102 Cal.App. 571 [283 P. 314]; *Banco Mercantil* v. *Sauls, Inc.* (1956) 140 Cal.App.2d 316, 323 [295 P.2d 55].)''

The trial court's findings must stand.

The judgment is affirmed.

Stone, J., concurred.