No. 19,935.

THE OGALLAH ELEVATOR COMPANY, *Appellant,* V. FRED
HARRISON, *Appellee.*

### SYLLABUS BY THE COURT.

1. MASTER AND SERVANT—*Servant Engaged in Outside Business—Master no Claim to Earnings.* The rule that a servant must account to his master for earnings received from outside employment ordinarily relates to employment in the same kind of business in which his master is engaged and does not relate to the servant's earnings in another kind of business in which his master is not interested and which is not inimical or prejudicial to his master's business.

2. SAME. The plaintiff employed the defendant to manage its business of buying and selling grain and coal and to keep open during business hours its offices and warehouses and to keep its books and accounts. The defendant with the knowledge and acquiescence of plaintiff undertook for another employer the business of selling flour, a business which the plaintiff had considered and decided not to engage in. No complaint was made that the defendant neglected plaintiff's business on account of the other employment. *Held,* that the defendant's earnings in the sale of flour are his own property and the plaintiff has no legal claim thereto.

3. MANAGER OF CORPORATION—*Not a Guarantor of Credits Extended.* Ordinarily a manager of a business is not a guarantor of its credits extended nor an insurer against mistakes, and in the absence of negligence, he is not personally liable for an uncollectible debt.

4. SAME—*Use of Company's Scales—No Cause of Action Proven.* Where an elevator company lays claim to moneys earned and collected by its manager for the use of its scales, and the jury finds that the amount collected was somewhere between $12 and $30, and that the manager paid out between $10 and $25 for help in operating the scales, and that the manager retained no part of the earnings to his own use, the plaintiff fails to establish its cause of action.

5. TRIAL—*Incompetent Evidence—When Not Prejudicial.* Prejudicial error can not be based upon the admission of incompetent testimony when it is not shown to have improperly affected the result.

Appeal from Trego district court; JACOB C. RUPPENTHAL, judge. Opinion filed February 12, 1916. Affirmed.

*Herman Long,* of Wa Keeney, for the appellant.

*E. A. Rea,* of Hays, *Lee Monroe, James A. McClure,* **and** *C. M. Monroe,* all of Topeka, for the appellee.

The opinion of the court was delivered by

DAWSON, J.: The Ogallah Elevator Company brought this action against Fred Harrison, who served as its manager from November, 1909, until March, 1912, to recover $40.90 which he had paid to one Jeff Belveal without authority, and to collect from Harrison $180 which he had earned and received for the sale of flour for a rival elevator company while in the plaintiff's employment, and also to collect from defendant $40 which he had collected from various persons for the use of plaintiff's scales.

The defendant answered by pleading the statute of limitations and an audit and settlement as to the Belveal item; that the money received for the use of plaintiff's scales had been paid out with plaintiff's consent for work and labor; and that the sale of flour for the rival elevator did not interfere with his duty to plaintiff and that plaintiff lost nothing thereby, and that he had done this work with the knowledge and consent of plaintiff and its officers.

Plaintiff replied that any settlement touching the Belveal item and for the use of the scales had been procured by defendant's fraud and concealment, and made without authority and without its knowledge or ratification; and that if any officer consented to or acquiesced in defendant's employment to sell the rival elevator's flour, it was without authority from plaintiff.

The special findings and general verdict were in favor of defendant. The plaintiff assigns many errors in the admission and exclusion of evidence, in the instructions, and in the general result. Such of these as may have been of sufficient consequence to affect the final result will be noted.

1. Much of appellant's brief is devoted to its claim to the $180 earned by the defendant in the sale of flour for a rival elevator. The plaintiff was engaged in dealing in grain and coal. It was not engaged or concerned in the business of dealing in flour. It had considered the advisability of doing so, but on account of lack of funds it decided not to undertake it. The defendant's employment required him to attend to its business and keep its funds and accounts, and its offices and warehouses were to be opened for business from seven o'clock

a. m. until six o'clock p. m., or later if business demanded it. It was clearly shown that the plaintiff knew, through the only way a corporation can know—by notice to its president and directors—that the defendant was handling this flour, and it took no action to stop it as inimical to its business. If the plaintiff had any grievance on this account its action would be for breach of contract or in tort. It certainly has no legal claim to defendant's earnings. The case is not to be considered as if the plaintiff itself were dealing in flour and had employed the defendant for that purpose. The president of the plaintiff company testified:

"I remember the occasion of his (defendant's) accepting employment from the Wheatland Elevator Company; before he accepted that employment there had been talk about handling flour by the directors of the Ogallah Elevator Company at a meeting that they held; it had been discussed at different times while I was on the board, and the company was financially embarrassed, and was n't able to build a building, so that they could handle this stuff, and they did n't feel as though they would like to go in debt in order to handle it; we supposed naturally that the sale of flour would draw trade for our other business; we were buying wheat, some corn, and handling coal. . . . I can recollect it, it had been talked through the board, and we all understood it, and the stockholders all knew it, and I said as far as I am personally concerned, that you can handle that flour, providing that it don't interfere with our other business; I don't know how soon he commenced handling the flour after that; I did learn of it after he commenced; I understood all the time he was handling it that he was getting pay from the Wheatland Elevator Company and I understood that he was keeping that pay for himself; I never made any objection to this because it was talked among the board, and a number of the board, and while they did n't all of them, did n't sanction it, they did n't say for him not to handle it. They all knew it and they never objected; that is, to the board; it was n't brought up before the board as I remember; the reason for this was talked over among themselves that he was n't getting hardly enough wages to justify him in staying there, and he had a position offered him for more wages, and we, I think part of the board, perhaps all of it, I could n't say, agreed to let him—agreed that if he handled that, he could use—collect the money for his own affairs. I got that started wrong. The intention was to help out his salary, and he was talking of leaving, and I says: 'We can't afford to let Fred go; we have had him here ever since the elevator started, and he knows more about the business, and he came here green and inexperienced, and he did n't know anything about bookkeeping, and had to learn everything, and after we had learned him, or he had learned himself rather, that I thought best that we keep him right on the job, and by helping his salary out on the

side by handling this flour, why, he was willing to stay with us a little while longer. This was talked over in a general way. I don't say it was talked over at the board, but in a general way, and the outsiders and the stockholders all knew of this thing, because I talked with different ones both stockholders and directors."

Whether this situation of affairs is viewed as an acquiescence on the part of the plaintiff as found by the jury (10 Cyc. 1065; 16 Cyc. 714), or as showing the nature of plaintiff's claim to defendant's earnings in the sale of the flour, the result was correct (*Wheeler & Tappan Co. v. Dahms,* 50 Ill. App. 531; *Hillsboro National Bank v. Hyde,* 7 N. Dak. 400, 75 N. W. 781; *Clarke v. Kelsey,* 41 Neb. 766, 60 N. W. 138; 26 Cyc. 1020; 5 Labatt's Master and Servant, 2d ed., § 2037).

The gist of the cases just cited is to the effect that the employer can not claim as his own the earnings of his servant from an independent employment on an unrelated business. The appellant recognizes this rule, but has been led astray in its application. Its idea appears to have been that since the dealing in flour could have been associated conveniently with the plaintiff's grain and coal business, it was entitled to the earnings on the flour business. Moreover, plaintiff's long acquiescence in defendant's outside employment estops it to claim his outside earnings.

2. Turning next to the item of $40.90 which was alleged to have been paid to Belveal without authority: While not directly pleaded by defendant that it was paid out by mistake, the plaintiff was apprised of that fact. Plaintiff's counsel said as much in his opening statement to the jury. The evidence showed that the plaintiff owed Belveal for wheat and Belveal owed the plaintiff for coal, and in settling accounts the defendant, as agent for the plaintiff, paid Belveal $40.90 too much. It was clearly shown to have been an innocent mistake, and when discovered it was charged against Belveal's account. No fair interpretation of defendant's contract of employment bound him as a guarantor of the credits extended by the plaintiff. Technically, counsel for appellant is right in his contention that defendant should have pleaded that he paid out this money by mistake. But when plaintiff knew this fact as shown by the opening statement of its counsel, and it was clearly established and uncontroverted by the evidence,

shall we now, on account of defendant's failure to plead the mistake, reverse this case and send it back to the trial court, which would in furtherance of justice permit him to amend his answer in that particular? Since there is no dispute as to the fact, and plaintiff does not even suggest that it was misled and does affirmatively show that it was fully apprised of the facts, the revised code forbids a reversal on such a ground. (Civ. Code, §§ 141, 581; *Root v. Packing Co.,* 94 Kan. 339, 345, 147 Pac. 69; *Hamilton v. Railway Co.,* 95 Kan. 353, 359, 360, 148 Pac. 648.)

3. Appellant has some slight ground for its complaint touching the rulings of the court on the admission of evidence relating to the moneys collected by the defendant for the use of the scales. The authorities cited which show that the plaintiff was not entitled to defendant's earnings in the sale of flour, an independent business from that in which the plaintiff was engaged, are just as precise and definite to the effect that defendant's earnings within the scope of the employer's business belong to his employer. Moreover, the keeping of an accurate account of the moneys which in any way pertained to plaintiff's business was one of the matters clearly covered by defendant's employment, and this duty and obligation ought not to be lightly excused by informal assent on the part of individual officers or directors. But the facts, based upon competent testimony, are shown by the findings of the jury:

"7. Did the defendant during his employment by the plaintiff do certain weighing for compensation on plaintiff's scales without accounting to said association for such compensation? Answer: Yes.

"8. If you answer No. 7 'yes,' how much money did he receive for such weighing? Answer: Amount not shown to be less than twelve or more than thirty dollars.

"9. How much money did Fred Harrison pay out on account of help in the matter of weighing hay? Answer: Amount not shown to be less than ten or more than twenty-five dollars.

"10. Did Fred Harrison retain for his own use any of the money taken by him on account of weighing hay? If so, how much? Answer: No."

These findings fail to show that the defendant owed the plaintiff anything on this item. He did fail to keep an account. He did not appropriate the scale earnings to his own use. So said the jury. How then can it be material whether the evidence which was introduced was competent or incompetent to show whether the plaintiff had authorized by positive

sanction or by acquiescence the appropriation of the scales' earnings to defendant's personal use?

We have carefully considered the other questions presented, but do not deem it necessary to comment on them. We note the appellant's criticisms of the trial court's many adverse rulings to its objections to the evidence. Most of the evidence objected to covered the action of the board of directors ordering a dismissal of this suit, and the attitude of individual officers and directors towards the appropriation of the scales' moneys by the defendant. As we view the case, the evidence was probably incompetent, but we fail to trace prejudicial error to its admission.

In the voluminous abstracts and copious briefs, which show clearly the diligence and zeal with which counsel for both litigants have presented this cause, these controlling facts appear: (a) the plaintiff has no legal claim on defendant's earnings on the sale of the Wheatland Company's flour; (b) the defendant was not personally liable for the money paid to Belveal by mistake; and (c) while defendant was bound by his contract of employment to keep an accurate account of the scales' earnings and failed to do so, he did have authority to pay out these moneys and did pay them out for services in plaintiff's behalf, and the jury found that none of the scales' moneys was appropriated to the defendant's private use. Thus the issuable and controlling facts have all been settled by the jury adversely to plaintiff's contention; and since no prejudicial error can be detected, the judgment must be affirmed.