No. 23,440.

RICHARD M. MORE et al., *Appellants*, v. FRANK BURROUGHS, *Appellee*.

SYLLABUS BY THE COURT.

1. OIL AND GAS LEASE—*Findings of Fact Supported by Evidence*. Findings of fact which are a correct recapitulation of the evidence cannot be said to be in conflict with the evidence or to be unsupported thereby.

2. AGENCY—*Right of Agent to Deal in Subject Matter of His Agency for His Personal Advantage*. An agent or partner, for his personal advantage, cannot deal in the subject matter of the agency or partnership, nor use, to the detriment of the agency or partnership, information acquired by him while acting in its business, but, when not prevented by the terms of the agency or partnership, he may act freely in all matters outside these restrictions.

More v. Burroughs.

Appeal from Allen district court; OSCAR FOUST, judge. Opinion filed April 8, 1922. Affirmed.

*F. J. Oyler,* of Iola, *E. S. McAnany, M. L. Alden,* and *T. M. Van Cleave,* all of Kansas City, for the appellants.

*Altes H. Campbell,* and *Travis Morse,* both of Iola, for the appellee.

The opinion of the court was delivered by

MARSHALL, J.: In this action, the plaintiffs, Richard M. More, B. H. Minch, John S. Ware, Thomas E. Martin, and William L. Martin, seek a judgment declaring them to be the owners of an undivided one-fourth interest in two oil and gas leases and requiring the defendant to account to the plaintiffs for all income and profits received from the properties. Judgment was rendered in favor of the defendant, and the plaintiffs appeal.

Extensive findings of fact were made. Those findings summarized the evidence on which the judgment was based. They are too long to be reproduced in an opinion by this court. They will be summarized, but attention should be called to the fact that the findings are almost wholly of an evidentiary nature.

The findings showed that all the parties to this action resided in Bridgeton, N. J.; that Richard M. More, one of the plaintiffs, became acquainted with Harry Winters, an Allen county, Kansas, oil operator; that Winters wrote to More at Bridgeton, concerning some oil properties that the former had for sale; that More and four of his coplaintiffs had a consultation in Bridgeton concerning the purchase of some of the properties named by Winters in his letter to More; that the consultation resulted in the plaintiffs sending the defendant to Allen county to investigate the properties named by Winters; that the defendant went to Allen county, made an examination of the properties, talked with Winters concerning them, returned to Bridgeton, and reported to the plaintiffs; that they purchased one of the properties described, which will be hereinafter referred to as the More lease; that the defendant became associated with the plaintiffs in this lease and acquired an interest in it equal to that held by each of the plaintiffs; that an organization to develop the More lease was effected, and the defendant was made secretary and treasurer thereof; that the defendant took charge at Bridgeton of all the business there connected with the More lease for the parties interested; that operations were commenced on the lease; that after a time, matters not progressing in a satisfactory manner, Winters, who was

also interested in the lease, and who was in control of operations in Allen county, requested that some of the plaintiffs come and look over the situation with him, and consult with him concerning further work on the lease; that the plaintiffs, together with the defendant, then held a consultation which resulted in the defendant being again sent to Allen county to render whatever assistance, counsel, and advice was possible to further the operation and development of the More lease; that the defendant had no authority to act in any matter outside of the More lease; that on examination, the defendant and Winters concluded it was advisable to stop operation on that lease, which was then producing oil; that Winters and the defendant entered into negotiations which resulted in the defendant's purchasing an interest in what was known as the Rice and Daniels leases; that the defendant returned to Bridgeton and reported to the plaintiffs what had been done concerning the More lease, but at first did not say anything about purchasing an interest in the Rice and Daniels leases; that the defendant afterward told some of the plaintiffs that he had purchased an interest in the Rice and Daniels leases and described those leases; that the parties to whom the defendant talked desired to purchase a part of the interest that had been acquired by him in those leases, but he refused to sell; that as a result of subsequent negotiations between the plaintiffs and Winters, other oil properties adjoining the Rice and Daniels leases were purchased by the plaintiffs; that at the time the defendant purchased the interest in the Rice and Daniels leases, those leases were undeveloped, but the Rice lease subsequently proved to be a very valuable property; that, after it became known to the plaintiffs that the Rice lease was valuable, they demanded of the defendant that he turn over to them a proportionate share of the proceeds of the lease that had been received by him; that he refused to do so; and that this action was then commenced.

The ninth finding of fact concerned the authority given to the defendant on his last trip to investigate the More lease. The eleventh finding concerned the report made by the defendant to the plaintiffs and the negotiations for the purchase of other properties by the plaintiffs from Winters. The fourteenth finding was as follows:

"That there was no express contract either in writing or in parol between the plaintiffs and the defendant whereby the defendant was to do or perform any services for the plaintiff other than were connected with the 'More lease' aforesaid, and its operation and development, they, plaintiffs, paying the actual ex-

penses of defendant in making of before-mentioned trips to Kansas, and he, defendant, making no charge for his time, and in such regard no complaint was or is made by plaintiffs against the defendant."

A motion to set aside these three findings was filed by the plaintiffs on the ground that the findings were contrary to the evidence, and were not supported nor sustained by it. That motion was denied.

1. Plaintiffs argue that the ninth, eleventh, and fourteenth findings of fact made by the court were not sustained by the evidence; that the court committed error in overruling the motion of the plaintiffs to set aside those findings; and that the judgment of the court was contrary to the evidence. These present but one question—the sufficiency of the evidence. Attention is again called to the evidentiary nature of the facts set out in findings made by the court. One complaint is that those findings were not supported by the evidence. One difficulty with the argument of the plaintiffs is that the findings of which they complain are largely recapitulations of the evidence itself. Where this is not true, the findings complained of are supported by evidence. The plaintiffs' argument is not good.

2. The real question presented by the plaintiffs is a question of law, and that question is: Could the defendant, while in the employ, of and acting for the plaintiffs, on information received by him while so employed, acquire for himself another and entirely separate oil lease? There is no question about the inability of the defendant to acquire any interest in the More lease or benefit out of it advantageous to himself and detrimental to the rights of the plaintiffs, but that does not dispose of the question now being discussed. Here, the plaintiffs so far as the More lease was concerned were not in any way injured, and the defendant acquired no additional rights in it. It is true, however, that he obtained the information concerning the Rice and Daniels leases while he was acting for the plaintiffs in connection with the More lease.

Illustrations may be of some benefit. A man in New York might desire to purchase a particular ranch in Greenwood county, Kansas, and might send an agent there to examine the ranch and purchase it, or decline to purchase it, as the judgment of the agent might determine. In the negotiations, the agent might learn from the owner that he owned another ranch in Wabaunsee county which he also desired to sell. The agent might examine the latter ranch and purchase it for himself. The principal certainly would have no right to call on the agent for a division of any profits made by him in the transaction.

A merchant in Chicago might buy a trainload of flour from a miller in Salina, and difficulty might arise. An agent might be employed and instructed to go to Salina and adjust the difficulty. While so doing, the agent might acquire information concerning another trainload of flour that could be purchased with profit at Wichita, and would do so. It cannot be said that the agent must account to the principal for the profits made by the agent in this transaction, nor that the agent must first communicate to the principal the information obtained.

The Prairie Oil & Gas Company may, and doubtless does, have men employed for the purpose of investigating oil fields everywhere for the benefit of the company. Such an agent, if he acquires information concerning an oil field, must give the company the benefit of that information. But, if the Prairie Oil & Gas Company should employ an expert specifically to go to Alberta in Canada and investigate a reported oil field, and the expert should go and, while investigating that field, should obtain from trappers and hunters information that would lead him to believe that a great oil field exists in Labrador, and he should faithfully report the result of his investigation of the reported field in Alberta, but should say nothing about Labrador, and should afterward go to Labrador, discover the oil field there, develop it and become immensely wealthy as a result, he could not be compelled to answer to the Prairie Oil & Gas Company for his profits in Labrador.

The following language is found in 1 Mechem on Agency, 2d ed., § 1214:

"Patents for inventions made by the agent, even though made during the agency, and even though the agent's attention to the matter was the result of the knowledge or information acquired in the principal's business, are not regarded as a fruit of the agency within the rules here being dealt with, and the principal cannot have them merely as the result of the relation. There must be an employment to make the inventions or a contract that the principal shall have them."

2 C. J. 697 uses this language:

"It has been held that the mere fact that he [the agent] has contracted to sell articles for his principal does not preclude him [the agent] from selling similar articles for himself." (See, also, *Hitchhorn v. Brandley*, 117 Iowa, 130; *Butterick Pub. Co. v. Boynton*, 191 Mass. 175.)

It may be argued that the plaintiffs and the defendant were partners, and that a stricter rule should be applied to the defendant than

is found in the law of agency. In answer to such an argument, we quote from *Latta v. Kilbourn*, 150 U. S. 524, 549, as follows:

"It is well settled that a partner may traffic outside of the scope of the firm's business for his own benefit and advantage, and without going into the authorities it is sufficient to cite the thoroughly considered case of *Aas v. Benham*, 2 Ch. D. 1891, 244, 255, in which it was sought to make one partner accountable for profits realized from another business, on the ground that he availed himself of information obtained by him in the course of his partnership business, or by reason of his connection with the firm, to secure individual advantage in the new enterprise. It was there laid down by Lord Justice Lindley that if a member of a partnership firm avails himself of information obtained by him in the course of the transaction of the partnership business, or by reason of his connection with the firm, *for any purpose within the scope of the partnership business, or for any purpose which would compete with the partnership business, he is liable to account to the firm for any benefit he may have obtained from the use of such information; but if he uses the information for purposes which are wholly without the scope of the partnership business, and not competing with it, the firm is not entitled to an account of such benefits.*"

It is dealing directly with the subject matter of the agency or partnership and using information acquired while acting in the agency or partnership to its detriment and to the profit of the unfaithful agent or partner that is prohibited. Here, there was no authority to the defendant to contract for or even to investigate oil leases for the plaintiffs. If the defendant had purchased the Rice and Daniels leases for the plaintiffs, they would not have been bound by that purchase. He could not bind them because he had no authority to do so. He was not authorized to investigate for them, and what he did was not in violation of his instructions, was not a violation of the rights of the plaintiffs, and did not injure them in any way. The defendant faithfully did what he was sent to do, and the plaintiffs cannot complain of his conduct in purchasing the Rice and Daniels leases.

The judgment is affirmed.