**PRATT v. SHELL PETROLEUM CORPORATION.**

**No. 1678.**

Circuit Court of Appeals, Tenth Circuit.

Dec. 22, 1938.

Rehearing Denied Feb. 7, 1939.

Austin M. Cowan and Mark H. Adams, both of Wichita, Kan. (W. E. Holmes, Howard· L. Baker, Charles E. Jones, Edward F. Arn, C. A. McCorkle, W. A. Kahrs, and Robert H. Nelson, all of Wichita, Kan., on the brief), for appellant.

C. P. Berry, of St. Louis, Mo., and Joseph G. Carey, of Wichita, Kan. (Guy A. Thompson, Samuel A. Mitchell, Frank A. Thompson, Truman Post Young, and Calvin A. Brown, all of St. Louis, Mo., and George C. Spradling, of Wichita, Kan., on the brief), for appellee.

Before PHILLIPS, BRATTON, and WILLIAMS, Circuit Judges.

BRATTON, Circuit Judge.

This action was instituted by Shell Petroleum Corporation against E. S. Pratt, and for convenience reference will be made to the parties as they were denominated in the court below. The purposes of the action were to impress a trust upon certain mineral properties, and for an accounting.

Plaintiff is a corporation engaged on a large scale in the business of producing crude petroleum, refining it into manufactured products, and selling them in the market. In connection with such business, it explores and investigates land in respect to its geological and geophysical formation to determine the probability of its oil and gas content; and it acquires oil and gas leases in the State of Kansas directly from the owners of land or·by assignment. Defendant is a geologist and he was in the employ of plaintiff from January 8, 1924, to September 30, 1934. His first employment was in the capacity of an instrument man; from January 1, 1925, to January 1, 1926, he served as core drill geologist with office at Ponca City, Oklahoma; from January 1, 1926, to January 1, 1927, he acted as geologist with office at Ponca City; from January 1, 1927, to February 15, 1928, his .position was that of subsurface geologist with office at Ponca City; and from February 15, 1928, throughout the remainder of his employment, he was district geologist with office at Wichita, Kansas. As district geologist he was in charge of the geological work throughout Kansas, and all other geologists and field men worked under him and reported to him. His duties were to correlate the geological work done in his district, and to report upon it to his immediate superior, the division geologist at Tulsa, Oklahoma, with his recommendations and comments. His reports consisted of oral and written data of findings in the field, core drills, subsurface and otherwise, together with his conclusions based thereon. More than $900,000 was expended on core drilling in Kansas during the years 1927 to 1933, both inclusive, approximately $50,000 per year was expended for other geological information, and maps were made from the core drill reports and forwarded to the office in Tulsa. Valuable records, maps, data, and other geological information of a highly confidential nature were in his custody and under his control at the office in Wichita. He made recommendations in his capacity as district geologist in respect to the acquisition of leases in given locations within his district, and he also made recommendations concerning the location of test wells to be drilled on acreage on which plaintiff owned oil and gas leases. Sometime during the year 1924, he received a notice in writing from plaintiff as follows: "The instructions heretofore given to the effect that no one in the employ of the company is permitted to purchase oil and gas leases or any interest therein or royalties, either in his own name or in the name of another, are to be strictly adhered to, and a violation either of the letter or spirit of these instructions will result immediately in dismissal of the person guilty of such violation."

Despite the existing fiduciary relation and in violation of the notice, he secretly acquired during his employment thirty-eight separate mineral (royalty) interests, undivided interests in six separate oil and gas leases, and three separate overriding royalty interests, all in lands within his district; and he acquired one additional mineral interest less than thirty days after his employment terminated. In a majority of the transactions a ·consideration was paid in money, but in others he told an outside person that a certain area was likely territory, or that it was to be developed, or that a test well was to be drilled, or that plaintiff and the Gypsy Company were co-operating to sink a test well there; the outside person acquired mineral interests in reliance upon such information; and he then conveyed undivided parts thereof to defendant in return for the information supplied, and without other con-

sideration. Thirty-one of such interests, leases, and overriding royalties were taken in the name of S. W. Tilden, six in the name of Jack R. Corzine, three in the name of Claude Kirk Heath, and six in the name of defendant. Tilden, Corzine, and Heath were fictitious names, there being no such persons. Defendant also entered into three drilling agreements providing for the drilling of test wells on land in which he and his associates owned leases. Ten of the mineral interests were conveyed to third persons prior to the institution of the suit, and plaintiff dismissed without prejudice as to five others. Defendant rented a postoffice box and had a bank account in the name of Tilden, and he obtained several loans from the bank in that name. Plaintiff paid him in the fictitious name of Tilden sums aggregating more than· $25,000, representing proceeds from oil runs accruing to the mineral interests of record in that name. On two occasions he called the Tulsa office of plaintiff on long distance telephone and stated that Tilden had made inquiry concerning a check which had not arrived. Plaintiff first learned about September 30, 1934, that defendant had thus acquired and owned certain mineral interests; he was immediately discharged; and this suit followed.

The court entered a decree imposing a trust upon the several properties of record in the name of defendant and those of record in the fictitious names, ordering an accounting, and dismissing the counterclaim in which defendant sought to recover money which had been impounded, representing proceeds accruing from production properly allocated to such properties. Defendant was required to convey to plaintiff unencumbered those interests which he had acquired without payment of any consideration; and he was required to convey in like manner such of those interests which he had acquired upon payment of a consideration as plaintiff should elect in writing to take after the accounting had been completed, provided that such conveyance or conveyances should be made only upon plaintiff tendering into court the amount or amounts which, added to that received by defendant by way of royalty or royalties or otherwise by virtue of his apparent ownership of such interests, would equal the amount or amounts that he had paid for such interests. Other provisions were made in relation to the accounting but it is unnecessary to detail them. The appeal is from that decree.

■ The first contention advanced is that since the notice in writing provided that the penalty for its violation would be dismissal there is no basis for a constructive trust. The notice recited that no employee should purchase oil and gas leases or royalties, and that any one violating it would be immediately discharged; but it did not recite directly or indirectly that such discharge would be the only penalty invoked or that other remedies would not be sought. There is nothing in the notice or elsewhere to indicate that the notice was intended, regarded, or treated as a waiver or surrender of any equitable remedy open to plaintiff for its transgression. It cannot be successfully maintained that the notice excluded any remedy to which plaintiff could otherwise have resort.

■ The next contention is that plaintiff should not prevail for the reason that in the acquisition of the royalty interests defendant did not engage in any business or undertaking which was competitive in character with that of plaintiff. Plaintiff acquired oil and gas leases either directly from the owner or through· assignment. Defendant acquired interests in six separate leases, and he and his associates made three separate drilling contracts. In some instances, plaintiff owned the lease and defendant a fractional part of the interest in the same land but in most instances their interests were in different lands situated in the same territory. In two instances, defendant acquired interests in oil and gas leases which plaintiff had sought to acquire but without success. There was testimony that early in 1928 defendant recommended that plaintiff acquire certain royalty interests and was advised that the recommendation had been rejected, and that in the future he should confine his activities to recommendations for the acquisition of leases; and he acquired the mineral interests in suit after that time. An agent may traffic for his own advantage and benefit outside the scope of the business of his principal without being accountable for the profits realized. Latta v. Kilbourn, 150 U.S. 524, 14 S.Ct. 201, 37 L.Ed. 1169. The inhibition is upon dealing with the subject-matter of the agency and making use of information ac-

quired while acting within the scope of the agency. It is infidelity of that kind with opportunity of detriment to the principal that subjects the unfaithful agent to liability for the gains and profits. Ogallah Elevator Co. v. Harrison, 97 Kan. 289, 154 P. 1016, L.R.A.1916D, 777; More v. Burroughs, 111 Kan. 28, 205 P. 1029. Here defendant was employed and placed in a position of the highest trust and confidence because of his peculiar fitness to obtain geological and geophysical information, and then to reach an intelligent conclusion based upon it in respect to the existence of oil or gas. Geological and geophysical knowledge was a part of the subject-matter of the agency. He made use of that knowledge and information acquired in the course of his agency in purchasing royalty interests and interests in leases for cash consideration, and he gave out confidential information concerning the plans of plaintiff for development in order that the persons to whom it was given might acquire interests on the strength of it and later convey parts of them to him. He thus fraudulently dealt with the very subject-matter of the agency for his own personal benefit. It requires little elucidation to demonstrate the proposition that the situation was one in which there could be an inducement to make recommendations from time to time with respect to the acquisition of leases and the location of test wells which would be of the greatest advantage to himself. It stands out with accentuated emphasis that these clandestinely owned royalty interests and leases could easily give rise to an inducement to subordinate the interests of his principal to those of himself in making such recommendations. It must be held upon plain principles of reason and sound public policy that an agent occupying a place of trust and confidence is not permitted to put himself in a position in which his personal interests may come in conflict with his duty to his principal. He cannot assume a position which may afford the temptation to subordinate the interests of his principal to those of himself in the discharge of his duty. In order to be free from temptation he is disabled from placing himself in such a position. United States v. Carter, 217 U. S. 286, 30 S.Ct. 515, 54 L.Ed. 769, 19 Ann. Cas. 594; City of Findlay v. Pertz, 6 Cir., 66 F. 427, 29 L.R.A. 188; Commonwealth Finance Corporation v. McHarg, 2 Cir.,

282 F. 560; Daus v. Short, 169 Iowa 1, 150 N.W. 1047; Lucey v. Vilhauer, 64 S.D. 54, 264 N.W. 203; Jensen v. Sidney Stevens Implement Co., 36 Idaho 348, 210 P. 1003.

These principles find support in Morrison v. Woodbury, 105 Kan. 617, 185 P. 735. There plaintiff held the agency for several fire and tornado insurance companies. He employed defendant as a solicitor among farmers and furnished him lists and records showing the dates of policies written, their expirations, and the rates at which they were written, and other information of great value to plaintiff. Defendant made entries in the records showing the same character of information respecting the new business which he secured. He retained the lists and records when discharged and was using them in soliciting business for another agency. Plaintiff sought to enjoin their use for that purpose. The court held that the lists and other data were the absolute property of plaintiff; that defendant was wrongfully using them; and that he should be required to surrender them into court for delivery to plaintiff. Defendant places reliance upon More v. Burroughs, supra, but it does not lend him aid. There plaintiffs and defendant resided in New Jersey. They became interested in the acquisition of some oil properties in Kansas. Defendant was sent to Kansas to investigate them. Plaintiffs and defendant purchased one of such properties called the More lease, and defendant acted for himself and his associates in developing it. He made a second trip to Kansas which resulted in a determination to discontinue operations. While in Kansas, he acquired for himself an interest in a lease covering separate and distinct land. Plaintiffs sought to recover a proportionate share of the proceeds of that lease. Recovery was denied on the ground that the authority of defendant was confined to an investigation and development of a lease on certain land; that he was without authority from his associates to investigate or acquire other leases; and that they were not injured in respect to the lease in which they were interested by his acquisition of a wholly different and distinct lease. The factual distinction between that case and this one is clear and decisive. However, the court took occasion to enunciate the rule that an agent is prohibited from dealing directly

with the subject-matter of the agency and using the information acquired while acting in the agency to the detriment of the agency and to his own profit, but held that the facts failed to bring the case within the rule. For the reasons already pointed out this case comes well within the rule. And the case of Garst v. Scott, 114 Kan. 676, 220 P. 277, 34 A.L.R. 395, is in harmony. There plaintiffs operated a laundry and defendant was employed to solicit customers, receive work to be done, and deliver it after it had been done. Defendant left the employ of plaintiffs, later purchased an interest in a competing laundry, and declared his intention to solicit business from the customers on the route which he had worked. But he did not make a list of such customers while in the employ of plaintiff and he did not propose to use any other record which belonged to plaintiffs. The court held that his knowledge concerning the names and addresses of the customers was not the property of plaintiffs; that one who leaves the employ of another has the right to take with him all the skill he has acquired, and all the information and knowledge he has received provided nothing taken is the property of the employer; and that skill, information, and knowledge, except trade secrets, become a part of his equipment and cannot be taken from him. The court further said, however, that trade secrets are the property of the employer and cannot be taken or used by the employee for his own benefit, and that lists of customers may be the property of the employer. A judgment restraining the defendant from soliciting business from the customers of plaintiffs was denied, but the facts there are widely different from those here.

■ Another point urged for reversal is that defendant was not in the land department and was not an agent with authority to make purchases of leases for plaintiff. He was in the geological department; leases were acquired through the land department; and he lacked authority to acquire leases. But he was engaged in securing scientific data, forming scientific conclusions in respect to the probable existence of oil or gas, and submitting recommendations with respect to the acquisition of leases. Those in the land department then acted at least in part upon his recommendations. He knew the purpose for which his recommendations were made and that leases were acquired in reliance upon them. Furthermore, he made recommendations in respect to the location of test wells upon leases which had been thus acquired. The breach was no less substantial than it would have been had he been engaged in the purchase of leases. The situation was precisely the same in principle and gravity.

■ It is further insisted that a trust should not have been imposed for the reason that there was no proof that plaintiff suffered detriment or damage as the result of defendant acquiring the mineral interests. In order to warrant the imposition of a constructive trust, the evidence that a fiduciary relationship existed, and that it was breached must be clear, convincing, and trustworthy. Colorado & Utah Coal Company v. Harris, 97 Colo. 309, 49 P.2d 429. But such a trust "is the formula through which the conscience of equity finds expression. When property has been acquired in such circumstances that the holder of the legal title may not in good conscience retain the beneficial interest, equity converts him into a trustee." Beatty v. Guggenheim Exploration Co., 225 N.Y. 380, 122 N.E. 378, 380; Quinn v. Phipps, 93 Fla. 805, 113 So. 419, 54 A.L.R. 1173. It was not necessary for plaintiff to show that it suffered detriment, injury, or damage. The law was indubitably contravened by the creation of a situation which lent inducement or temptation for wrongdoing; and a court of equity does not concern itself with the question whether the opportunity was embraced and the principal suffered actual injury. Hoyt v. Latham, 143 U. S. 553, 12 S.Ct. 568, 36 L.Ed. 259; Robertson v. Chapman, 152 U.S. 673, 14 S.Ct. 741, 38 L.Ed. 592; United States v. Dunn, 268 U.S. 121, 45 S.Ct. 451, 69 L.Ed. 876; Turner v. Kirkwood, 10 Cir., 49 F.2d 590; Daus v. Short, supra; Selwyn & Co. v. Waller, 212 N.Y. 507, 106 N.E. 321, L. R.A.1915B, 160. The proof was clear, convincing, and trustworthy that a fiduciary relationship existed between the parties, and that defendant breached the duty which it imposed upon him for his own benefit. He acquired the legal title to the royalty interests and the leases in such circumstances that he cannot in good conscience retain the beneficial interests. That was enough to convert him into a trustee. Robertson v. Chapman, supra;

838

Trice v. Comstock, 8 Cir., 121 F. 620, 61 L.R.A. 176; Cunningham v. Pettigrew, 8 Cir., 169 F. 335; Beatty v. Guggenheim Exploration Co., supra.

Defendant argues very earnestly that in some instances plaintiff had abandoned all of its leases upon land in a given area before he acquired royalty interests in it, and that in others plaintiff had abandoned all of its leases in a specified territory before the case was tried. The fallacy of the argument is that it rests upon the postulate that actual detriment or damage must be shown in a case of this kind. Repeating, a fiduciary relationship and a breach of duty which it exacts warrants the imposition of a constructive trust where the holder of the legal title cannot in good conscience retain the beneficial interests without regard to the question of pecuniary damages.

The question which comes next is whether plaintiff has been guilty of laches in failing to elect whether it would take the trust properties. Plaintiff discovered in 1934 that defendant had acquired certain interests and promptly discharged him. Soon thereafter he furnished a list of the properties but plaintiff did not know the facts in respect to the consideration paid, the revenues derived, and the profits realized or losses sustained. These facts were still unknown at the time of the trial and that was one reason for ordering an accounting. The election must be made with reasonable promptness after the facts are known or can be reasonably ascertained but not in advance of that. Compare Malone v. Young, 148 Kan. 250, 81 P.2d 23. Unlike limitation, laches does not depend solely upon the lapse of time. The doctrine cannot be invoked against a party unless the delay has worked a disadvantage to another. Townsend v. Vanderwerker, 160 U.S. 171, 16 S.Ct. 258, 40 L.Ed. 383; McIntire v. Pryor, 173 U.S. 38, 19 S.Ct. 352, 43 L.Ed. 606; City of Roswell v. Mountain States Telephone & Telegraph Co., 10 Cir., 78 F.2d 379; Spralding v. Hawk, 133 Kan. 545, 1 P.2d 268. Plaintiff has not failed to exert reasonable diligence in ascertaining the facts concerning the several interests; there is no showing that the position of defendant changed to his disadvantage during the delay; and for these reasons the doctrine of laches is without application.

The decree is affirmed.