## EAGLE INDEMNITY CO. v. CHERRY et al.
### No. 12933.

United States Court of Appeals
Fifth Circuit.

May 26, 1950.

Rehearing Denied July 5, 1950.

George E. Seay, Dallas, Tex., Ralph W. Malone, Dallas, Tex., for appellant.

Wm. Andress, Jr., Dallas, Tex., Fred M. Ramsey, Dallas, Tex., for appellees.

Before HOLMES, McCORD, and RUSSELL, Circuit Judges.

McCORD, Circuit Judge.

This action was brought by George T. Cherry, Harry T. Hoag, E. B. Manthey, and Thomas C. Blaylock, who composed the partnership firm of Southwest Industrial Equipment Company, against the Eagle Indemnity Company, a corporation organized under the laws of the state of New York. The suit is on a fidelity bond in the principal sum of $10,000.00. The case was tried by the district court without a jury, and judgment was entered in favor of plaintiffs in the amount of $9,039.74, plus interest.

The principal question presented is whether there is substantial evidence to support the finding of the trial court that the actions of the general manager of the partnership firm in buying and selling steel at a personal profit, when such steel was purchased in the partnership name and on the strength of its reputation and standing in the trade, was such fraud or dishonesty as would constitute a breach of defendant's fidelity bond, and render it liable for damages thereunder.

The evidence reveals that the partnership business of Southwest Industrial Equipment Company was located at Dallas, Texas, where it was engaged in the business of fabricating steel products. Jack K. Chandler was employed as general manager of the partnership at a salary of $5,200.00 per year.

In order to insure the honest and faithful performance of the duties of Chandler and the other partnership employees, the defendant, Eagle Indemnity Company, issued to the members of the partnership a fidelity bond upon payment of an agreed premium. The bond insured against " * * * Any loss of money or other property * * * belonging to the insured, or in which the insured has a pecuniary interest * * * which the insured shall sustain * * * through * * * fraudulent or dishonest act or acts committed by any one or more of the employees * * * ". It is without dispute that this bond was in full force and effect during the entire period covered by the alleged fraudulent and dishonest conduct of Chandler in and about the management of the partnership business at Dallas.

It was shown that at the time Chandler was acting in the capacity of general manager of the business of the Southwest Industrial Equipment Company, there was a shortage of steel, and that plant production was slowed down and many orders were unfilled because of this steel shortage. During this period it was impossible for individual buyers to purchase steel from a mill or warehouse on their own account, as the industry was then operating under an informal rationing system whereby the available steel supply was distributed and sold only to those persons who represented old customers of a steel plant or warehouse. It was therefore Chandler's duty, as general manager of the partnership, to keep the business going by placing orders with the steel suppliers, so that when they procured steel they would deliver a proportionate share to Southwest Industrial Equipment Company, as an old and regular customer.

When the relevant and material evidence is dredged up from the voluminous record in this case, it reveals conclusively that on different occasions during the months of May and June, 1947, Chandler purchased in the name of Southwest Industrial Equipment Company, from National Steel Products Company of Houston, Texas, several carloads of sheet steel which aggregated 451,624 pounds; that instead of taking over these steel shipments for his company he permitted one Batson to accept delivery of the steel and dispose of it for a profit on the open market, after which the profit received was divided between Batson and Chandler; that Chandler used the name of the partnership firm for which he worked, its reputation and its facilities to procure this steel and thereafter, through Batson, he clandestinely and fraudulently diverted the steel shipments from the company of which he was general manager to other persons and companies at an increased price, for which he was paid a share of the profits amounting to thousands of dollars. In one particular transaction, it was shown that Chandler purchased a shipment of steel in the name of his company, sold it through Batson to another company for a nice personal profit, and several days later bought it back again for the use of his own company at over one and a half times its original cost. Moreover, it is without dispute that no record of these fraudulent transactions was kept by chandler, and that he kept them secret from the partners who owned the company and had employed him.

It is fundamental law that an agent bears a fiduciary relationship to his principal, and owes him the duty of good faith and loyalty. 2 Am.Jur. 202, Sections 251, 261, and 268. By virtue of this relationship, no agent is entitled to take any unfair

advantage that his position may offer him to profit, at his employer's expense, beyond the agreed compensation for his services. He should not be allowed to speculate for his own private gain adversely to the interests of his employer, or to compete with his employer's business without his knowledge or consent. Here, when Chandler, as the general manager and trusted employee of Southwest Industrial Equipment Company, purchased steel in his company's name which he would have been unable to procure on his own account, and later diverted the steel through Batson to the open market at a secret personal profit, he manifestly breached the duty of good faith which he owed to his employers. We therefore conclude the evidence unerringly discloses fraudulent and dishonest conduct on the part of Chandler while the fidelity bond was in full force and effect, and that such constitutes a clear breach of the terms of the bond for which the defendant is liable. 35 Am.Jur. 516, Sec. 87; Wardell v. Union Pacific Railroad Co., 103 U.S. 651, 26 L.Ed. 509; American Employers' Insurance Co. v. Dallas Joint Stock Land Bank, Tex.Civ.App., 170 S.W.2d 546; Burleson v. Earnest, Tex.Civ.App., 153 S.W.2d 869; Shannon v. Marmaduke, 14 Tex. 217; Michigan Crown Fender Co. v. Welch, 211 Mich. 148, 178 N.W. 684, 13 A.L.R. 896.

The cases cited and relied upon by appellant are readily distinguishable under their own facts, and are in nowise applicable or controlling here. They merely hold that an employee need not account to his employer for an outside profit derived from an independent business not connected in any way with the business of his employer. Manifestly, that rule does not apply here. Cf. Latta v. Kilbourn, 150 U.S. 524, 14 S. Ct. 201, 37 L.Ed. 1169; Ogallah Elevator Co. v. Harrison, 97 Kan. 289, 154 P. 1016, L.R.A.1916D 777; Mayberry v. Newell, 200 Iowa 458, 204 N.W. 413; Ætna Ins. Co. v. Church, 21 Ohio St, 492.

We find no reversible error in the record, and the judgment is accordingly

Affirmed.